2006-NMCA-154

148 P.3d 823

**John HOWELL, Worker–Appellant,**

v.

**MARTO ELECTRIC and Twin City Fire Insurance Co., Employer/Insurer–Appellees.**

**No. 26,180.**

Court of Appeals of New Mexico.

Nov. 9, 2006.

David S. Proffit, Albuquerque, NM, for Appellant.

Law Offices of Eva K. Rappaport, Kathryn Grusauskas, Beall & Biehler, an Association, Jose R. Blanton, Albuquerque, NM, for Appellees.

## OPINION

PICKARD, Judge.

{1} In this case, we are asked to consider the effect of an employer's failure to provide

notice of its decision regarding selection of health care providers, as required by New Mexico's Workers' Compensation scheme. Because the Workers' Compensation Judge (WCJ) erred as a matter of law when he found that evidence that neither the employer nor the worker chose the first health care provider was sufficient to rebut the presumption raised by the employer's failure to provide proper notice, we reverse and remand for further proceedings.

## FACTS AND PROCEEDINGS BELOW

{2} The relevant facts are, for the most part, undisputed. John Howell (Worker) worked as an electrician for Marto Electric. On June 8, 2005, Worker fell while performing electrical work and suffered serious injuries to his hip, leg, and back. Worker was promptly transported by emergency medical personnel to the University of New Mexico Hospital (UNMH) where he received emergency care for five days. Marto Electric and its insurer, Twin City Fire Insurance Company (collectively, Employer), had notice of Worker's injury and authorized care at UNMH.

{3} Two days after the accident, Employer mailed a letter to Worker's home asking Worker to contact Employer regarding his injury, requesting medical authorization to obtain records and bills, and informing Worker that Employer had the right to direct medical care. The letter did not, however, state Employer's decision regarding which party would choose the initial health care provider. We refer to "health care provider" as "HCP." While it appears that the letter was mailed to Worker's home, Worker was still receiving treatment at UNMH and did not read or see the letter.

{4} While receiving treatment at UNMH, Worker was told that he would need additional rehabilitation for his injuries following his discharge from UNMH. Worker informed UNMH personnel that he wanted to go to a rehabilitation facility somewhere close to his home in Rio Rancho. Hospital personnel then contacted Rita Kelly, a claims adjuster for Employer, regarding preauthorization for Worker's admittance at Rio Rancho Nursing and Rehabilitation (RRNR). Although Kelly authorized a ten-day stay, RRNR refused to admit Worker because it did not want to comply with the Workers' Compensation fee schedules.

{5} On June 13, 2005, Worker was transferred to HealthSouth Rehabilitation Hospital (HealthSouth) in Albuquerque. Although this transfer was also preauthorized by Employer, Employer maintains that it had no input in the selection of HealthSouth. Nor did Worker request to be sent to HealthSouth; at the time, he was heavily medicated and unaware of the place to which he was being transferred.

{6} Worker received inpatient care at HealthSouth for approximately eight weeks and was discharged in mid-August. After his discharge, Worker sought treatment from his chiropractor, Dr. Buel Worzeniak, for problems with his sacrum and pelvis. Prior to this appeal, both parties agreed that the treatment was not authorized by Employer and that Worker would not make a claim for payment of the chiropractor's bills. After an appeal was filed in this case, Employer sought to supplement the record proper with evidence that Dr. Worzeniak's bills were actually paid by Employer. This motion was held in abeyance pending submission to a panel for a decision and is disposed of below.

{7} In mid-September, Worker told Employer that he wanted Dr. Carlos Esparza to be his HCP. Employer claims that it then advised Worker verbally that he would be able to make the first selection of HCP. Employer also faxed a "Notice of Change of Health Care Provider" form to Worker. Worker returned the completed form to Employer on September 16, 2005. On the same day, Employer filed a "Health Care Provider Disagreement Form Objection to Notice of Change" with the Workers' Compensation Administration (WCA), stating that while it agreed that Worker could choose Dr. Esparza as his HCP, Employer reserved the right to select a second HCP in sixty days.

{8} A hearing was conducted below to resolve the HCP dispute between the parties. After taking evidence, the WCJ found that non-emergency care began upon Worker's discharge from UNMH. The WCJ also determined that Employer did not provide written

communication to Worker regarding the order of selection of HCPs. The WCJ observed that Employer's failure to provide notice in this regard gave rise to a presumption that Employer had selected Worker's initial HCP. However, the WCJ concluded that this presumption "vanishe[d]" once the other evidence recited above was presented; the WCJ determined that *neither* party selected HealthSouth as an HCP and, alternatively, that the selection of HealthSouth as an HCP was by implied agreement of both parties. The WCJ therefore concluded that Worker's selection of Dr. Esparza as his HCP constituted the initial HCP selection, such that Employer retained the right to select a second HCP if it wished. Worker appealed the WCJ's decision to this Court.

{9} On appeal, we understand Worker to challenge the WCJ's decision on three grounds. First, Worker attacks the WCJ's determination that the initial HCP, Health-South, was selected by neither party, contending that such a characterization is contrary to law. Second, and relatedly, Worker argues that the WCJ erred in concluding that the presumption of initial HCP selection vanished through the presentation of evidence that Employer did not deliberately select the first, non-emergency HCP. Third, and finally, Worker asserts that even if the WCJ correctly concluded that Employer could rebut the presumption of initial HCP selection in this fashion, the evidence presented by Employer below was insufficient. Because we are persuaded that the WCJ erred in its application of pertinent statutory and regulatory laws with respect to these arguments, we reverse and remand for further proceedings.

{10} In this opinion, we will first dispose of the pending motion and countermotion to supplement the record. Next, we will discuss the WCJ's determination that the initial HCP, HealthSouth, was selected by neither party. Finally, we will examine the WCJ's conclusion that the presumption of initial HCP selection vanished or could be rebutted through the presentation of evidence that Employer did not deliberately select the first, non-emergency HCP.

## PENDING MOTION AND COUNTERMOTION TO SUPPLEMENT THE RECORD

{11} Initially, it is necessary to dispose of the pending motion and countermotion to supplement the record. As mentioned above, Employer filed a motion to submit to this Court evidence of chiropractor bills that were paid by Employer after the hearing below. Worker opposed the motion, and filed a countermotion seeking to submit evidence to this Court regarding changes to the form letter sent by Employer to injured workers. Both the motion and countermotion were held in abeyance pending submission to a panel for a decision.

{12} It is clear from the record that none of the materials with which the parties seek to supplement the record were submitted below. Generally speaking, this Court's review is limited to evidence presented to the WCJ in the first instance. *Flowers v. White's City, Inc.*, 114 N.M. 73, 75–76, 834 P.2d 950, 952–53 (Ct.App.1992). In administrative appeals, this Court functions as a reviewing court and not as a fact-finder. *See Gallegos v. City of Albuquerque*, 115 N.M. 461, 464, 853 P.2d 163, 166 (Ct.App.1993) (observing that it is for the WCJ, not the appellate court, to weigh the evidence and make findings of fact); *cf. Martinez v. N.M. State Eng'r Office*, 2000–NMCA–074, ¶ 48, 129 N.M. 413, 9 P.3d 657 ("[I]n administrative appeals the district court is a reviewing court, not a fact-finder, and therefore may consider only evidence presented . . . in the first instance [below]."). Because the parties have suggested no compelling reason to depart from these well-established principles of appellate jurisprudence, we decline to consider the supplemental materials. The motion and countermotion are therefore denied.

## DISCUSSION

{13} The selection of HCP is a highly contested issue in workers' compensation cases. Kelly Brooks et al., *Survey, Workers' Compensation, Survey of N.M. Law: 1990–91*, 22 N.M. L.Rev. 845, 864 (1992) (citing A. Larson, *Workmen's Compensation Law* § 61.12(b) (1981)). As we previously recognized,

The ideal behind allowing the parties to choose a physician is a balance between two values. On the one hand, the Legislature has recognized the value in protecting an employee's right to select his or her physician and to maintain a confidential physician-patient relationship. Balanced against this objective, the Legislature has also recognized the value of achieving maximum and quality control of an injured employee's medical and rehabilitative process.

*Chavez v. Intel Corp.*, 1998–NMCA–175, ¶ 5, 126 N.M. 335, 968 P.2d 1198. New Mexico strikes a compromise approach between these two values, *see* 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 94.02[2] (2006), allowing both the worker and the employer an opportunity to select an HCP. NMSA 1978, § 52–1–49(B), (C) (1990); *see also City of Albuquerque v. Sanchez*, 113 N.M. 721, 727, 832 P.2d 412, 418 (Ct.App.1992). A brief overview of New Mexico's statutory and regulatory scheme for selection of HCPs is required before we proceed to the merits of Worker's appeal.

{14} Section 52–1–49(B) provides that the employer has the first opportunity either to select the initial HCP or to allow the worker to select an HCP of his or her choice. *See Chavez*, 1998–NMCA–175, ¶ 6, 126 N.M. 335, 968 P.2d 1198. Sixty days thereafter, the party who did not select the initial HCP has an opportunity to select a second HCP. *See* § 52–1–49(C). The party choosing the second HCP need not make any showing as to the appropriateness of the choice; rather, the party's choice results in the automatic replacement of the initial HCP. *See Chavez*, 1998–NMCA–175, ¶ 7, 126 N.M. 335, 968 P.2d 1198; *Sanchez*, 113 N.M. at 726, 832 P.2d at 417. Although an objection may be filed, *see* § 52–1–49(D), the party objecting to the second HCP bears the burden of demonstrating that the HCP is not providing reasonable or necessary medical care. *Banks v. IMC Kalium Carlsbad Potash Co.*, 2003–NMSC–026, ¶ 26, 134 N.M. 421, 77 P.3d 1014; *Chavez*, 1998–NMCA–175, ¶ 7, 126 N.M. 335, 968 P.2d 1198; *Sanchez*, 113 N.M. at 727, 832 P.2d at 418; *see also* 11.4.4.11(L) NMAC (2003) (stating the burden of proof).

{15} Employers are required to communicate their initial decisions with respect to which party will choose the initial HCP to their workers in writing. 11.4.4.11(C)(2)(a) NMAC. Such communication may occur pre-injury, in the form of general notice to all workers of the employer's decision, *see id.* (providing that an employer "may use a wallet card, a poster stating the decision posted with the WCA poster, a flyer inserted semiannually with pay checks, or any other method employer knows will be successful in alerting the worker"), or it may occur post-injury, after a worker has already received medical treatment. *See Grine ex rel. Grine v. Peabody Natural Res.*, 2005–NMCA–075, ¶ 13, 137 N.M. 649, 114 P.3d 329 (holding that 11.4.4.11(C)(2)(c) NMAC "contemplates allowing an employer to exercise its rights under Section 52–1–49(B), even though the worker may have already obtained medical treatment before the employer makes its choice under the statute"), *rev'd in part on other grounds*, 2006–NMSC–031, ¶ 38, 140 N.M. 30, 139 P.3d 190 [hereinafter *Grine II* ] ("[A]n employer may inform its workers at the time of employment how to secure prompt medical attention or, upon [the worker's required] notice under [NMSA 1978, § ] 52–1–29 [ (1990) ], either allow an injured worker to select a HCP or make its own initial selection."). However, if an employer fails to give the required notice under 11.4.4.11(C)(2)(a) NMAC, "the employer shall be presumed, absent other evidence, to have selected the HCP initially." 11.4.4.11(C)(2)(b) NMAC.

{16} Worker contends that the WCJ erred in the interpretation and application of the foregoing statutory and regulatory provisions. The interpretation of the Workers' Compensation Act and associated regulations is a question of law that we review de novo. *See Banks*, 2003–NMSC–026, ¶ 11, 134 N.M. 421, 77 P.3d 1014; *Abeyta v. Bumper to Bumper Auto Salvage*, 2005–NMCA–087, ¶ 9, 137 N.M. 800, 115 P.3d 816. Although a court will generally defer to an agency's interpretation of an ambiguous statute or regulation that it is charged with administering, it is the function of courts to interpret the law in a manner consistent with

the legislative intent. *State ex rel. Madrid v. UU Bar Ranch Ltd. P'ship,* 2005–NMCA–079, ¶¶ 25–26, 137 N.M. 719, 114 P.3d 399.

### 1. Characterization of HealthSouth as an HCP Selected by Neither Party

{17} In his findings of fact and conclusions of law, the WCJ found that medical care at HealthSouth was the product of an implied agreement of the parties and was not a selection of HCP by either party. Worker contends that the WCJ's designation of HealthSouth as the non-selection of either party was a "makeshift homemade creature" concocted in order to allow each party to choose an HCP. Worker argues that such a designation is contrary to law. We agree with Worker.

{18} An injured worker has a duty to inform his or her employer of the injury within fifteen days of the occurrence of the injury. Section 52–1–29(A). If, "by reason of his injury or some other cause beyond his control, the worker is prevented from giving notice within that time ... he shall give notice as soon as may reasonably be done and at all events not later than sixty days after the occurrence of the accident." *Id.* Once an employer has notice of a work-related injury, Section 52–1–49(A) provides that

> [a]fter an injury to a worker and subject to the requirements of the Workers' Compensation Act, and continuing as long as medical or related treatment is reasonably necessary, the employer shall, subject to the provisions of this section, provide the worker in a timely manner reasonable and necessary health care services from a health care provider.

*Id.* (citation omitted); *Grine II,* 2006–NMSC–031, ¶ 24, 140 N.M. 30, 139 P.3d 190. In addition to Section 52–1–49(A)'s requirement of providing timely health care services to an injured worker, Section 52–1–49(B) requires that "[t]he employer shall initially either select the health care provider for the injured worker or permit the injured worker to make the selection." Thus, once an employer receives notice of a worker's injury, the HCP selection procedures in the Workers' Compensation Act are triggered, and the employer has the right to either direct care or allow the worker to direct care. *Cf. Grine II,* 2006–NMSC–031, ¶ 38, 140 N.M. 30, 139 P.3d 190 (finding that employer notice of a worker's injury is "a threshold issue in applying Section 52–1–49"). The employer must then communicate its decision regarding selection of care to the worker within a reasonable period of time. *Grine II,* 2006–NMSC–031, ¶ 24, 140 N.M. 30, 139 P.3d 190.

{19} Emergency care is specifically excluded from the HCP selection process. *See* 11.4.4.11(C)(1) NMAC. There are no other types of medical care excluded from the HCP selection procedures in Section 52–1–49. Thus, assuming that the employer has notice of the injury, upon the beginning of non-emergency care, Section 52–1–49 specifically contemplates only two types of HCPs: (1) an initial HCP chosen by one of the parties at the employer's direction and (2) a second HCP chosen by the party that did not choose the initial HCP. *See* § 52–1–49(B), (C). It is possible that there could be an authorized HCP for a reasonable time following emergency care and before the employer decides which party will select the initial HCP, but the facts of this case are not included in this category. There are no other categories of HCPs described in this section. Therefore, once an employer has notice of a work-related injury and the reasonable time has passed, the first non-emergency HCP must be considered the initial HCP.

{20} In the present case, since Employer authorized Worker's emergency care at UNMH immediately after Worker's accident, we must assume that Employer had notice of Worker's work-related accident. Once Employer had notice of Worker's accident, Section 52–1–49 required Employer to provide reasonable and necessary medical care to the injured worker in a timely manner, *see* § 52–1–49(A), and to make a decision regarding which party would select the initial HCP, *see* § 52–1–49(B). Employer then needed to communicate its decision to Worker within a reasonable amount of time. *See Grine II,* 2006–NMSC–031, ¶ 24, 140 N.M. 30, 139 P.3d 190.

{21} In his findings of fact and conclusions of law, the WCJ concluded that non-emergency care began upon Worker's discharge from UNMH on June 13, 2005. On that same day, Worker was transferred to HealthSouth. Employer claims without factual basis that because at the time of Worker's transfer to HealthSouth it was without sufficient information to make a determination as to choice of HCP under Section 52–1–49(B). HealthSouth must be considered a non-selection of either party. We observe, however, that Worker received care at HealthSouth for eight weeks and that Employer did not communicate its decision regarding choice of care until Worker decided on his own to change providers. Employer then cites to 11.4.4.11(C)(2)(c) NMAC, which provides that "[m]edical treatment provided to the worker prior [to] the employer[']s written decision to either select the HCP, or to permit the worker to select the HCP, shall be considered authorized health care, the cost of which is to be born[e] by the employer." Although Employer does not explain why it cites to this section, we presume that Employer is implying that this section allows for an HCP that is not a selection of either party. While there may be instances where an HCP is not the selection of either party, we disagree with Employer that this case presents such an instance.

{22} We previously ruled that 11.4.4.11(C)(2)(c) NMAC "contemplates allowing an employer to exercise its rights under Section 52–1–49(B), even though the worker may have already obtained medical treatment before the employer makes its choice under the statute." Grine, 2005–NMCA–075, ¶ 13, 137 N.M. 649, 114 P.3d 329. As the Supreme Court has recognized, "[t]he distinction between a qualified HCP under Section[ ] 52–1–49 and [NMSA 1978, § 52–1–51(C) (1990) ], and authorized health care under 11.4.4.11(C)(2)(c) NMAC is not clear." Grine II, 2006–NMSC–031, ¶ 22, 140 N.M. 30, 139 P.3d 190. The Court further stated that it was not "persuaded that authorized health care is equivalent to treatment by a qualified HCP," but declined to discuss whether there was a distinction. Id. While this statement would lend support to Employer's suggestion that HealthSouth could be considered authorized health care and not an HCP selection by either party, we think that under the facts of this case, the purpose behind the regulation suggests otherwise.

{23} In Grine II, the Supreme Court found that the purpose behind 11.4.4.11(C)(2)(c) NMAC is to ensure "prompt medical attention for a work-related injury." Grine II, 2006–NMSC–031, ¶ 22, 140 N.M. 30, 139 P.3d 190. The regulation basically requires an employer to pay for any medical care provided to a worker before the employer complies with the notice requirement under Section 52–1–49(B) and 11.4.4.11(C)(2)(a) NMAC. Because the employer's duty to direct care begins once the employer has notice of the work-related injury and the medical care has transitioned from emergency to non-emergency care, 11.4.4.11(C)(2)(c) NMAC must cover those situations where the worker has received medical treatment and the employer has not received notice of the work-related injury, such as emergency care. We observe that 11.4.4.11(C)(2)(c) NMAC may also cover those situations where the worker has been automatically transferred from his or her emergency provider to a non-emergency provider, which is similar to the facts of the present case. The reason why HealthSouth cannot be considered an authorized HCP under 11.4.4.11(C)(2)(c) NMAC in this case is because (1) Employer had notice of Worker's accident prior to his transfer from UNMH to HealthSouth and (2) Employer did not make a decision as to which party was to direct care within a reasonable period of time. Once the employer has notice of a worker's accident, it must then comply with its duties under Section 52–1–49(B) and make the determination within a reasonable amount of time. Any transfer to an HCP after this cannot be anything other than the selection of an HCP. In this case, we do not believe that eight weeks is a reasonable amount of time in which to give notice. Nor has Employer presented a factual basis showing that the period between June 8 and June 13 was insufficient time in which to make a determination. Such an interpretation supports the purpose behind the regulation as it allows a

worker to seek immediate and continuous medical attention for a work-related injury without creating controversy over which party—employer or worker—will have to pay for the medical care.

{24} To the extent that Employer had notice of Worker's injury and failed to communicate its decision regarding selection of HCP, HealthSouth must be considered the initial HCP, and we hold that the WCJ erred to the extent that he concluded otherwise. We therefore hold that HealthSouth is the initial HCP under Section 52–1–49, and we now must decide which party chose Health-South as the initial HCP. *See* § 52–1–49(B).

## 2. Rebuttal of Presumptive Initial Selection by Employer

{25} In the hearing before the WCJ, Employer asserted that the form letter mailed after Worker's accident constituted sufficient notice of Employer's decision regarding selection of HCP. The WCJ rejected this argument, based on the contents of the letter and Worker's assertion that he had not seen the letter. Employer does not challenge this determination on appeal.

{26} The WCJ also determined that Employer's failure to give proper notice under 11.4.4.11(C)(2)(a) NMAC gave rise to the presumption under 11.4.4.11(C)(2)(b) NMAC that Employer had chosen the initial HCP. However, the WCJ found that this presumption vanished or was rebutted by the introduction of evidence that neither party chose HealthSouth as the initial HCP, or alternatively that the choice of HealthSouth was by implied agreement of both parties. Therefore, the WCJ held that Worker's choice of Dr. Esparza as his HCP constituted the initial HCP selection under Section 52–1–49(B). Worker contends that the WCJ's interpretation and application of 11.4.4.11(C)(2)(b) NMAC are incorrect as a matter of law and defeat the purpose of the provision.

{27} As previously discussed, employers are required to communicate to their workers in writing about their initial decisions with respect to which party will choose the initial HCP. 11.4.4.11(C)(2)(a) NMAC. If an employer does not provide this notice to a

worker, the employer is presumed to have chosen the initial HCP. 11.4.4.11(C)(2)(b) NMAC. Worker argues that the WCJ erred as a matter of law by finding that, although Employer did not comply with the notice requirements of 11.4.4.11(C)(2)(a) NMAC, the presumption created by the failure to comply was successfully rebutted by evidence that Employer did not choose HealthSouth as the initial HCP.

{28} The presumption created in 11.4.4.11(C)(2)(b) NMAC has been previously recognized, albeit in dicta, by our Supreme Court in *Grine II*, 2006–NMSC–031, 140 N.M. 30, 139 P.3d 190. The Court found that this provision requires an employer who has notice of a worker's work-related injury to communicate to the worker in writing its decision regarding which party will select the initial HCP. *Id.* ¶ 24. If the employer does not comply with this requirement, it is deemed to have selected the initial HCP. *Id.*

{29} In *Grine II*, a worker suffered a heart attack at work. *Id.* ¶¶ 10–11. The worker then sought treatment on his own from the New Mexico Heart Institute and from a cardiologist. *Id.* ¶ 12. Following a dispute over the admissibility of the worker's medical records, the WCJ concluded that the worker's treatment and care at the New Mexico Heart Institute and by the cardiologist constituted authorized medical care and that the employer still had an opportunity to make the initial HCP selection. *Id.* ¶ 22. Although the case was decided on other grounds, the Court stated that if the employer had notice of the worker's heart attack and did not inform the worker of its decision regarding selection of HCPs within a reasonable period of time following the heart attack, then the cardiologist was the employer's initial HCP selection. *Id.* ¶ 24.

{30} In the absence of any guidance or notification from an employer following an accident, it is obvious that a worker in need of medical care will seek treatment on his or her own. Under those circumstances, an employer will have had no input in the selection of the initial HCP. Thus, where an employer's noncompliance with 11.4.4.11(C)(2)(a) NMAC is challenged by a worker, an employer will always be able to present evi-

dence that it did not in fact choose the initial HCP. Additionally, an employer may also be able to present evidence that the worker selected the initial HCP. *See Grine II,* 2006–NMSC–031, ¶ 13, 140 N.M. 30, 139 P.3d 190. To allow either set of facts to rebut the presumption would eliminate the presumption in its entirety. Because the presumption constitutes a clear means of implementing the legislative intent expressed in Section 52–1–49(B) (requiring the employer to either initially select the HCP or permit the worker to make the selection), we will not construe the presumption to be allowed to vanish or be rebutted in this manner.

{31} The Court in *Grine II* did not address how an employer would rebut the presumption created by noncompliance with the notice requirements in 11.4.4.11(C)(2)(a) NMAC. The Act and regulations provide little guidance as well. We note that one of the purposes behind 11.4.4.11(C)(2)(b) NMAC is to provide an incentive to employers to comply with the notice requirements in 11.4.4.11(C)(2)(a) NMAC. This incentive would be seriously undermined if the presumption could be rebutted solely by evidence that an employer did not select the first non-emergency HCP or by the mere fact that a worker received health care from someone.

{32} It seems reasonably clear that another purpose behind 11.4.4.11(C)(2)(b) NMAC is to prevent those situations, as in the present case, where an employer does not make a decision as to which party will choose the initial HCP until eight weeks after a worker begins non-emergency health care. Indeed, Employer only informed Worker of its decision regarding selection of HCPs after Worker informed Employer that he wanted to change HCPs. Although our current Workers' Compensation Act allows both employer and worker input into selection of HCPs, an employer retains the power

to decide at what point the worker will be able to select his or her own HCP. *See* § 52–1–49(B). Concomitantly, an employer has a duty, upon notice of a work-related injury, to "provide the worker in a timely manner reasonable and necessary health care services from a health care provider." Section 52–1–49(A). It makes sense, therefore, to require an employer who has notice of a work-related injury "to communicate its HCP selection to [a w]orker within a reasonable period of time." *Grine II,* 2006–NMSC–031, ¶ 24, 140 N.M. 30, 139 P.3d 190. In situations where an employer has not complied with its duty to communicate its decision regarding selection of HCPs, it shall be deemed to have selected the first non-emergency HCP. 11.4.4.11(C)(2)(b) NMAC; *see Grine II,* 2006–NMSC–031, ¶ 24, 140 N.M. 30, 139 P.3d 190.

{33} We therefore hold that the WCJ erred as a matter of law in concluding that the presumption in 11.4.4.11(C)(2)(b) NMAC could be rebutted by evidence that Employer did not deliberately select HealthSouth as the initial HCP. We express no opinion as to whether Employer may otherwise rebut the presumption with other evidence, but we do hold that the evidence presented below was insufficient.

**CONCLUSION**

{34} We reverse and remand for further proceedings consistent with this opinion.

{35} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and JONATHAN B. SUTIN, Judges.