# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMCA-012

Filing Date: November 8, 2019

No. A-1-CA-36494

NATASHA SILVA,

       Worker-Appellant/Cross-Appellee,

v.

DENCO SALES COMPANY, INC.
and SEDGWICK,

       Employer/Insurer-Appellees/
       Cross-Appellants.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Rachel A. Bayless, Workers' Compensation Judge**

Released for Publication February 11, 2020.

Dorato & Weems LLC
Derek Weems
Albuquerque, NM

for Appellant

O'Brien & Padilla, P.C.
Erica R. Neff
Albuquerque, NM

for Appellees

New Mexico Workers' Compensation Administration
Hector H. Balderas, Attorney General
Santa Fe, NM
Craig C. Kling, Special Assistant Attorney General
Albuquerque, NM

for Amicus Curiae

## OPINION

**DUFFY, Judge.**

**{1}** In this Workers' Compensation appeal, we consider what constitutes valid and timely notice of an employer's decision regarding the initial selection of a health care provider (HCP) under New Mexico's Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2017), and corresponding regulations, and in the event of untimely notice, whether the employer is deemed to have made the initial HCP selection. We hold that notice is valid when it is sent by a third-party administrator on behalf of an employer, but that the notice in this case was untimely, and as a result, the HCP providing the initial, non-emergency care is the employer's initial HCP selection under Section 52-1-49(B). To the extent the Workers' Compensation Judge's (WCJ) order is to the contrary, it is reversed; and we remand for any further proceedings.

## BACKGROUND

**{2}** Natasha Silva (Worker) was employed by Denco Sales Co., Inc. (Employer) and was injured at work on the morning of February 1, 2017, when she pulled a forty-pound box off of a shelf and it fell onto her neck and shoulder. She reported the injury to her supervisor, who told her to seek medical care from Concentra because Concentra is the medical provider used by Employer. Worker went there later that afternoon for medical care. She was released to return to work with weight restrictions on lifting, pushing, and pulling.

**{3}** The claims process began immediately. Concentra sent a letter to Worker's supervisor stating that Worker had received treatment on February 1, 2017, for a work-related injury. The letter also requested that Employer fill out Employer's first report of injury for the insurance carrier to ensure timely management of the claim. Employer did so on February 2, 2017. On February 3, 2017, two days after the accident, Sedgwick Claims Management Services (Employer's third-party administrator) sent a letter to Worker stating that Sedgwick administers workers' compensation claims on behalf of Employer and provided contact information for the Sedgwick claims associate handling Worker's claim.

**{4}** During the month of February, Worker continued to receive medical care from Concentra. On February 28, 2017, Sedgwick sent Worker a letter (HCP letter) stating that Employer had decided to allow Worker to choose the initial HCP. Worker continued to treat with Concentra after receiving the HCP letter and was referred to Dr. Crawford for a C-spine evaluation on March 23, 2017. Exactly sixty days later, on May 22, 2017, Employer sent Worker a notice of change of health care provider, which notified Worker that Employer was claiming to have the automatic right to the second HCP selection under Section 52-1-49(B), (C) (allowing the employer to make the second HCP selection when the worker makes the first selection), and that Employer was changing Worker's doctor to Barrie Ross, MD. Worker timely filed an objection to the notice of change with the Workers' Compensation Administration (the Administration), arguing that Employer had made the initial selection of HCP by directing Worker to Concentra

on the day of the accident. Worker also contended that the HCP letter was legally insufficient notice of Employer's decision regarding the initial selection because it was untimely and because it was sent by an administrator, not Employer.

**{5}** The WCJ held a hearing on June 5, 2017, and issued a written order the next day with the following findings and conclusions. While the WCJ determined that Sedgwick was permitted to advise Worker of Employer's decision regarding selection of the initial HCP, the WCJ concluded that the February 28, 2017, HCP letter from Sedgwick was not valid written notice from Employer because it did not accurately reflect Employer's decision to initially direct Worker to Concentra. The WCJ held that "[b]ased on evidence presented, Employer has elected to initially direct Worker's medical care" but concluded that the period prior to the hearing was not a selection by either party under 11.4.4.12(B)(2)(b) NMAC. The WCJ further determined that "Employer's choice of initial [HCP] shall be in effect as set forth in [Section] 52-1-49(B) and 11.4.4.12(B)(2) and (3) [NMAC]," and permitted Employer the opportunity to select an initial HCP following the hearing. Employer notified Worker of its initial selection on June 7, 2017, again choosing Dr. Barrie Ross. Worker and Employer cross-appealed the WCJ's June 6, 2017, order.

## DISCUSSION

**{6}** In New Mexico, both the worker and the employer have an opportunity to select a HCP during the course of a worker's treatment. Section 52-1-49(B), (C). Over a decade ago, we remarked that "[t]he selection of HCP is a highly contested issue in workers' compensation cases," an observation that continues to prove true to this day. *Howell v. Marto Elec.*, 2006-NMCA-154, ¶ 13, 140 N.M. 737, 148 P.3d 823. Before proceeding to the merits of the parties' appeals, it is useful to undertake a brief overview of New Mexico's statutory and regulatory scheme for the selection of HCPs.

**{7}** Before 1990, "a worker had no right to participate in the selection of his treating physician, but only had the option of rejecting the selection made by the employer." *City of Albuquerque v. Sanchez*, 1992-NMCA-038, ¶ 19, 113 N.M. 721, 832 P.2d 412. "This placed New Mexico in the minority of jurisdictions in that the worker played no part in the selection of his doctor." *Id.* "The [L]egislature substantially rewrote Section 52-1-49 in 1990" to allow both the worker and the employer to have input into the selection of worker's health care provider. *Id.* ¶ 20. "Thus, both the value of allowing the worker to have a doctor he trusts and the need to ensure that the care received by the worker is appropriate and reasonable are accommodated." *Id.*

**{8}** "Section 52-1-49(B) provides that the employer has the first opportunity either to select the initial HCP or to allow the worker to select [a] HCP of his or her choice." *Howell*, 2006-NMCA-154, ¶ 14. "Sixty days thereafter, the party who did not select the initial HCP has an opportunity to select a second HCP." *Id.* (citing Section 52-1-49(C)). The party with the right to the second selection "need not make any showing as to the appropriateness of the choice; rather, the party's choice results in the automatic replacement of the initial HCP." *Howell*, 2006-NMCA-154, ¶ 14. The second HCP will

remain in effect throughout the duration of the worker's care unless a party files a request for change of HCP, in which case the objecting party bears the burden of demonstrating that the care being received is not reasonable. *See* Section 52-1-49(E), (F).

**{9}** The Administration, by regulation, has long required employers to "communicate their initial decisions with respect to which party will choose the initial HCP to their workers in writing." *Howell*, 2006-NMCA-154, ¶ 15 (citing former version of 11.4.4.12(B)(2)(a) NMAC). The employer may communicate its initial decision "pre-injury, in the form of general notice to all workers[,]" or post-injury. *Howell*, 2006-NMCA-154, ¶ 15; *see* 11.4.4.12(B)(2)(a) NMAC (requiring that "[t]he decision made by the employer shall be made in writing to the worker" and providing that an employer "may communicate the decision to select the initial HCP or to permit the worker the selection by any method reasonably calculated to notify workers").

**{10}** In the last decade, the Administration amended the rules governing notification of the employer's decision. Through the end of 2012, the pertinent regulation stated that "[i]f the decision of the employer is not communicated in writing to the worker, the employer shall be presumed, absent other evidence, to have selected the HCP initially." 11.4.4.11(C)(2)(b) NMAC (6/13/03). The regulation was amended at the end of 2012 to state, "[i]f the decision of the employer is not communicated in writing to the worker, then the medical care received by the worker prior to written notification shall not be considered a choice of treating HCP by either party." 11.4.4.11(B)(2)(b) NMAC (12/31/12).[1]

**{11}** Worker raises three issues regarding the initial selection of HCP in this appeal: (1) whether a third party may provide written notice on behalf of an employer; (2) whether Employer's notice was timely pursuant to Section 52-1-49(B); and (3) whether, in the absence of timely written notice, Employer is deemed to have made the initial HCP selection under Section 52-1-49(B). The issues on appeal require us to interpret the Act and regulations promulgated by the Administration; therefore our review is de novo. *See Howell*, 2006-NMCA-154, ¶ 16 ("The interpretation of the Workers' Compensation Act and associated regulations is a question of law that we review de novo."). "Our main goal in statutory construction is to give effect to the intent of the [L]egislature." *Grine v. Peabody Nat. Res.*, 2006-NMSC-031, ¶ 17, 140 N.M. 30, 139 P.3d 190 (internal quotation marks and citation omitted). "We look first to the plain meaning of the statute's words, and we construe the provisions of the Act together to produce a harmonious whole." *Id.* (internal quotation marks and citation omitted). To the extent we "interpret[] sections of the administrative code, we employ the same rules as used in statutory construction." *Romero v. Laidlaw Transit Servs., Inc.*, 2015-NMCA-107, ¶ 20, 357 P.3d 463. "After we determine the meaning of the [Act and its associated regulations], we review the whole record to determine whether the WCJ's findings . . . are supported by substantial evidence." *Grine*, 2006-NMSC-031, ¶ 17 (internal quotation marks and citation omitted).

---

1The regulation was recompiled as 11.4.4.12(B)(2)(b) NMAC in 2014.

## I.    Insurers and Administrators May Send Written Notice of an Employer's Decision Regarding the Initial Selection of HCP

{12}    Twenty-seven days after Worker was injured, Sedgwick sent Worker the HCP letter stating, "Employer has decided to allow [Worker] to choose the initial [HCP.]" The WCJ concluded that "[a]ny written communication from Sedgwick on behalf of Employer advising Worker of Employer's decision is valid [to] the extent the written communication is authorized and accurately reflects . . . Employer's decision on initial selection." Worker argues that notice of an employer's HCP decision must come from the employer directly. We disagree.

{13}    As an initial matter, we reject Worker's argument that Sedgwick stood in the shoes of Employer in regard to selection of a HCP, pursuant to Section 52-1-49(B), (C), as nothing in the record suggests that Sedgwick participated in making a HCP selection or in making the decision regarding initial selection. *See Johnson v. Hoyt & Son Tree Serv.*, 2007-NMCA-072, ¶ 14, 141 N.M. 849, 161 P.3d 894 (holding that only an employer and a worker are permitted to select HCPs under Section 52-1-49). The HCP letter states, "employer has decided" to allow Worker to make the initial selection, and Employer affirmed this statement below and on appeal. The issue presented in this appeal is whether Sedgwick was permitted to notify Worker of Employer's decision.

{14}    While Section 52-1-49(B) is clear that Employer must make the decision regarding initial selection, it is silent regarding the method of notification. The written notification requirement appears in 11.4.4.12(B)(2)(a) NMAC, the associated regulation to Section 52-1-49. That regulation states, "[t]he decision made by the employer shall be made in writing to the worker. Employer may communicate the decision to select the initial HCP or to permit the worker the selection by any method reasonably calculated to notify workers." 11.4.4.12(B)(2)(a) NMAC. Elsewhere in the administrative code, the Administration defined "employer" to collectively include "a workers' compensation insurance carrier or its representative; or any authorized agent of an employer or insurance carrier[.]" 11.4.1.7(I) NMAC; *see id.* (stating that "[t]he definitions . . . shall apply to all [Administration] rules unless expressly indicated otherwise in a specific part of these rules"). Consequently, insurers and third-party administrators may communicate written notice of the employer's decision for purposes of 11.4.4.12(B)(2)(a) NMAC.

{15}    Worker argues that the definition of "employer" in the Act does not include the insurer or third-party administrator and that the regulatory definition cannot modify the statute. *See* § 52-1-15 (defining "employer"). While the statutory definition would control if the statute and the regulation were in conflict, the parties have not argued that a conflict exists, nor do we perceive one as applied in this case. *See State v. Bowden*, 2010-NMCA-070, ¶ 10, 148 N.M. 850, 242 P.3d 417 ("In the event of a conflict or inconsistency between a statute and a regulation, we interpret the statute to take precedence."); *see also AMREP Sw. Inc. v. Sandoval Cty. Assessor*, 2012-NMCA-082, ¶ 14, 284 P.3d 1118 (reading pertinent statutory and administrative code provisions "together so as to give effect to their meaning"). 11.4.4.12(B)(2)(a) NMAC compliments

and gives effect to Section 52-1-49 and allows for written notice in any manner that an employer reasonably believes will successfully notify the worker. *See* 11.4.4.12(B)(2)(a) NMAC (stating that "[t]he employer may use a wallet card, a poster stating the decision posted with the [Administration] poster, a flyer inserted semi-annually with pay checks" or other methods that will successfully alert the worker). A letter from a third-party administrator communicating the employer's decision falls cleanly within that broad ambit. For these reasons, we affirm the WCJ and hold that Sedgwick was authorized to advise Worker of Employer's decision regarding the initial selection of HCP.

## II. Employer's Decision Regarding Initial Selection of HCP Was Not Made Within a Reasonable Time

**{16}**     Worker contends that even if the HCP letter constituted valid notice of Employer's decision regarding initial HCP selection, it was not communicated "within a reasonable amount of time" as required by Section 52-1-49(B). *Howell*, 2006-NMCA-154, ¶ 20 (holding that once an employer has notice of a worker's accident, Section 52-1-49(B) requires the employer to "make a decision regarding which party would select the initial HCP [and] communicate its decision to [the w]orker within a reasonable amount of time" (citation omitted)). While Employer agrees that notice must be given within a reasonable time, Employer argues that the twenty-seven-day period in this case was reasonable because employers maintain the right to investigate a worker's claim before making a HCP decision. We conclude, however, that twenty-seven days, in the context of the specific facts here, was not reasonable.

**{17}**     Employer correctly notes that the Act and its implementing regulations do not contain any deadline or otherwise define what constitutes a reasonable period of time for giving notice. We have previously considered the timeliness of an employer's HCP decision only once, in *Howell*. There, we decided under the circumstances presented that eight weeks was not a reasonable amount of time in which to give notice. *Howell*, 2006-NMCA-154, ¶ 23. In *Howell*, the employer had notice of the worker's accident on the day it occurred and authorized emergency care. *Id.* ¶ 2. After five days in the hospital, the worker was transferred to a rehabilitation facility where he received care for the next eight weeks. *Id.* ¶¶ 2, 21. The employer "did not communicate its decision regarding choice of care until [the w]orker decided on his own to change providers" at the end of the eight-week period. *Id.* ¶ 21.

**{18}**     While *Howell* did not set out bright-line factors to evaluate reasonableness, we found significant the fact that the employer had not "presented a factual basis showing that the [initial five-day period] was insufficient time in which to make a determination." *Id.* ¶ 23. Our inquiry into the initial period following the employer's receipt of notice of the worker's injury is instructive and indicates that the employer's HCP decision should closely follow after it receives notice of the worker's injury, unless the employer can demonstrate a factual basis for why additional time was necessary. *See id.* This interpretation is consistent with the Legislature's intent that a worker receive immediate and continuous medical care, and that the worker face only one automatic change in HCP after she begins non-emergency treatment. *See id.* ¶¶ 14, 19, 23 (stating that

Section 52-1-49 contemplates only two types of HCPs—the initial selection and the automatic replacement upon second selection). As in *Howell*, to determine whether a HCP notice was sent in a reasonable period of time, we consider how long the employer waited to notify the worker of its HCP decision after receiving notice of the worker's injury, and whether and to what extent the employer establishes facts justifying additional delay.

**{19}**    In this case, Employer received notice of Worker's accident on the day it occurred and directed Worker to obtain care from Concentra. That same day, Concentra notified Employer in writing that Worker had received medical treatment and asked Employer to file a report of the injury with its insurance carrier. Employer reported the accident to its insurer the following day, and also prepared its first report of the injury (E-1) to the Administration. Two days after the accident, Sedgwick sent a letter to Worker stating that it would be administering the claim on behalf of Employer. In the ensuing twenty-five days before Sedgwick mailed the HCP letter, the only action reflected in the record is that the Administration received Employer's E-1.

**{20}**    Employer's delay of almost one month before providing notice contrasts with Employer's prompt handling of other aspects of Worker's claim within days of her injury. We find significant the fact that Employer initially directed Worker to treat with Concentra on the day of the accident,[2] and by the time Sedgwick sent the HCP letter, Worker had been actively and regularly treating with Employer's preferred provider for nearly four weeks. As a practical matter, a change in HCP at that point would likely disrupt the continuity of Worker's care and may well have the effect of discouraging Worker from exercising her right to select her own HCP.

**{21}**    Further, Employer does not provide any factual basis or explanation for why twenty-seven days were necessary to make the HCP determination and to provide notice. Although Employer suggests that a four-week period was reasonable for the purpose of investigating Worker's claim, it failed to develop this argument below or on appeal—Employer does not say what it was investigating, why an investigation was necessary, or what impact the investigation had on its decision regarding the initial HCP selection. Moreover, Employer does not explain why an investigation into the underlying claim provides a justification for delaying an initial HCP decision when even the denial of the underlying claim does not impact the employer's rights and duties under Section 52-1-49. *Grine*, 2006-NMSC-031, ¶ 21 ("Section 52-1-49 does not preclude an

---

2Employer argues that its act of directing Worker to treat with Concentra on the day of the accident was intended to assist Worker in obtaining immediate care, and that an employer may be discouraged from engaging in such helpful conduct if its acts are considered for purposes of the initial selection of HCP. We note that the employer's duty to direct care begins once the employer has notice of the worker's injury, and employers can assist the worker in obtaining immediate medical care without adverse consequence to their rights under the Act. *See Howell*, 2006-NMCA-154, ¶ 19 ("Emergency care is specifically excluded from the HCP selection process."); 11.4.4.12(B)(1) NMAC ("The provision of emergency medical care shall not be considered a choice of a treating HCP by the employer or worker."). And when a worker's injury does not require emergency care, an employer's right to decide who will make the initial HCP selection is not affected by assisting a worker with obtaining medical care, as long as the employer complies with its duty under Section 52-1-49(B) to provide written notice of its decision within a reasonable period of time.

employer from selecting a HCP after it has denied a worker's claim for benefits."). On these facts, we conclude that twenty-seven days was not a reasonable amount of time in which to give notice, and consequently, that Employer failed to comply with the notice requirements of Section 52-1-49(B) and 11.4.4.12(B)(2)(a) NMAC.

### III. Employer is Deemed to Have Made the Initial Selection of HCP Under Section 52-1-49(B)

**{22}** We held in *Howell* that, once an employer has notice of a work-related injury, if the employer does not give written notice of its decision within a reasonable time, the first non-emergency HCP treating the worker must be considered the initial selection of either the worker or the employer under Section 52-1-49(B). *Howell*, 2006-NMCA-154, ¶ 19. We reasoned that:

> assuming that the employer has notice of the injury, upon the beginning of non-emergency care, Section 52-1-49 specifically contemplates only two types of HCPs: (1) an initial HCP chosen by one of the parties at the employer's direction and (2) a second HCP chosen by the party that did not choose the initial HCP. . . . There are no other categories of HCPs described in this section. Therefore, once an employer has notice of a work-related injury and the reasonable time has passed, *the first non-emergency HCP must be considered the initial HCP*.

*Howell*, 2006-NMCA-154, ¶ 19 (emphasis added). Contrary to Employer's contention, this holding is grounded in our construction of Section 52-1-49(B), and, as such, remains good law, regardless of any change in the regulations. Therefore, because Employer had notice of Worker's injury and did not give notice in a reasonable time, Concentra is the initial HCP under Section 52-1-49(B). The final question we address is whether to attribute the initial selection to Worker or Employer. We turn to the Act for the answer.

**{23}** Section 52-1-49 imposes certain, clear-cut duties on employers once a worker provides notice of a work-related injury. For instance, Section 52-1-49(A) requires the employer to "provide the worker in a timely manner reasonable and necessary health care services from a health care provider." *See also* 11.4.4.12(B)(2)(c) NMAC (imposing duty to pay for "treatment provided to the worker prior to the employer's written communicated decision" regarding selection of initial HCP). Most significantly, Section 52-1-49(B) requires the employer, within a reasonable period of time, to "initially either select the health care provider for the injured worker or permit the injured worker to make the selection." *Howell*, 2006-NMCA-154, ¶ 18 (internal quotation marks and citation omitted); *id.* ¶ 32 (describing Section 52-1-49(B) as imposing a duty on employer to act). In Section 52-1-49(B), the Legislature gave exclusive control over who selects the initial HCP to the employer and imposed the duty to timely make this determination on the employer. *See Howell*, 2006-NMCA-154, ¶ 32 ("Although our current Workers' Compensation Act allows both employer and worker input into selection of HCPs, an employer retains the power to decide at what point the worker will

be able to select his or her own HCP."); *id.* ¶ 23 ("Once the employer has notice of a worker's accident, it must then comply with its duties under Section 52-1-49(B) and make the determination within a reasonable amount of time."). Thus, an injured worker's right to initially select a HCP occurs only by permission of the employer. And under the Act and associated regulations, as Employer concedes, if the employer permits the worker to make the initial HCP selection, it must provide written notice of its decision allowing the worker to do so. *See* Section 52-1-49(B); 11.4.4.12(B)(2)(a) NMAC. Without written notice from the employer, the worker has been given no right to select the initial HCP, and so the initial HCP cannot be a selection by the worker. Therefore, where an employer fails to communicate its HCP decision in writing within a reasonable time, the initial HCP can only be a selection by the employer. In light of the legislative intent imbued in Section 52-1-49—imposing clear, affirmative duties on the employer to act in the provision of health care and the initial selection of a HCP—this construction effectively implements the Legislature's mandate.

**{24}** For these reasons, we conclude that Employer, by virtue of its failure to provide written notice of its HCP decision within a reasonable time, initially selected Concentra as the initial HCP, and that selection was in place for sixty days. Thereafter, Worker retained the right of second selection of HCP. Based on the foregoing, we conclude that the WCJ erred as a matter of law in its conclusion that Employer's initial selection period began on June 6, 2017. The WCJ concluded that Worker's medical care through the June 5, 2017 hearing was a period of no selection by either party, pursuant to 11.4.4.12(B)(2)(b) NMAC, which states that "[i]f the decision of the employer is not communicated in writing to the worker, then the medical care received by the worker prior to written notification shall not be considered a choice of treating HCP by either party." This interpretation of the regulations is inconsistent with the overarching statutory requirement in Section 52-1-49(B) that an employer must "communicate its decision regarding selection of care to the worker within a reasonable period of time." *Howell*, 2006-NMCA-154, ¶ 18; *see Romero*, 2015-NMCA-107, ¶ 19 ("If there is a conflict or inconsistency between statutes and regulations promulgated by an agency, the language of the statutes shall prevail." (internal quotation marks and citation omitted)); *Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 7, 288 P.3d 902 ("An administrative agency has no power to create a rule or regulation that is not in harmony with its statutory authority." (internal quotation marks and citation omitted)).

**{25}** We, however, need not reach today the issue of whether 11.4.4.12(B)(2)(b) NMAC is valid and enforceable. It may be possible to read 11.4.4.12(B)(2)(b) NMAC harmoniously with Section 52-1-49(B) and require that any period of non-selection last only for a reasonable time. We alluded to such a possibility in *Howell*. *See* 2006-NMCA-154, ¶ 19 ("It is possible that there could be an authorized HCP for a reasonable time following emergency care and before the employer decides which party will select the initial HCP[.]"). But, like *Howell*, "the facts of this case are not included in this category" because Employer failed to provide notice of its decision within a reasonable period of time. *Id.*

**{26}** For the foregoing reasons, Employer, having failed to provide written notice of its HCP decision within a reasonable period of time, is deemed to have selected the initial HCP here.

**CONCLUSION**

**{27}** We reverse and remand for any further proceedings consistent with this opinion.

**{28}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**