1998-NMCA-037

956 P.2d 132

**Jamie KAHRS, Plaintiff–Appellee,**

v.

**Karen SANCHEZ, Defendant,**

and

**The New Mexico Human Services Department, Defendant–Appellant.**

No. 17865.

Court of Appeals of New Mexico.

Nov. 5, 1997.

Certiorari Denied Feb. 25, 1998.

Kelly Mack Cassels, Clarke C. Coll, Sanders, Bruin, Coll & Worley, P.A., Roswell, for Plaintiff-Appellee.

Charles J. Milligan, Jr., General Counsel, Susan K. Rehr, Jesse Bindra, Assistants General Counsel, New Mexico Human Services Department, Santa Fe, for Defendant-Appellant.

## OPINION

FLORES, Judge.

1. On August 1, 1997, this Court filed its opinion in this case. On August 26, 1997, the New Mexico Human Services Department (HSD) filed a motion for rehearing. Thereafter, this Court ordered Plaintiff to file a response to the motion for rehearing, which response was filed on October 17, 1997. We hereby deny HSD's motion, but we withdraw our opinion of August 1, 1997, and substitute this opinion in its place.

2. In this case we are called upon to interpret HSD's statutory right to reimbursement of medicaid expenditures from a medicaid recipient's claim against a third-party tortfeasor. See NMSA 1978, § 27–2–28(G)(1)(b) (1995) (providing for assignment to HSD of right to recovery against tortfeasor); NMSA 1978, § 27–2–23(B) (1969) (providing for subrogation of recipient's right to recover medical expenses from third party). Plaintiff is the recipient, and co-defendant Karen Sanchez (Sanchez) is the third-party tortfeasor. HSD contends that its right to reimbursement is controlled by Section 27–2–28(G) and that assignment by operation of law entitles HSD to full reimbursement regardless of the facts. We disagree and affirm the trial court's equitable reduction.

*FACTUAL AND PROCEDURAL POSTURE*

3. Medicaid is a federal and state-funded program administered by the states in accordance with federal law. See 42 U.S.C. §§ 1396, 1396a (1994). HSD administers the Medical Assistance Program (medicaid) in New Mexico. See NMSA 1978, § 27–2–12 (1993).

4. Plaintiff applied for medicaid on or about December 26, 1989. As an eligibility requirement, Plaintiff assigned to HSD his right to medical support and other third-party payments.

5. On May 7, 1994 Plaintiff sustained serious and permanent injuries when Sanchez's automobile collided with the motorcycle that Plaintiff was riding. As a result of the accident, HSD expended at least $35,871.85 for medical assistance on Plaintiff's behalf. Plaintiff alleged that he suffered over $500,000 in damages resulting from physical pain and mental anguish, physical impairment, and loss of earnings and earning capacity. Although Sanchez had liability insurance of $50,000, she was otherwise judgment proof.

6. HSD discovered that Sanchez was a potentially liable third-party when Sanchez's insurer contacted HSD to determine the amount of the medicaid claim. Thereafter, HSD notified Plaintiff's counsel of Plaintiff's assignment to HSD. On October 12, 1995 Plaintiff filed an action for personal injury against Sanchez, together with a claim for equitable reduction of HSD's claim for reimbursement.

7. Plaintiff moved for partial summary judgment on the basis that the claim was comparable to one raised under Section 27–2–23(B), which *White v. Sutherland,* 92 N.M. 187, 585 P.2d 331 (Ct.App.1978), construed to be an equitable remedy. According to Section 27–2–23(B), "[w]hen the department makes medical assistance payments in behalf of a recipient, the department is subrogated to any right of the recipient against a third party for recovery of medical expenses to the

extent that the department has made payment."

8. HSD maintained that its claim was a legal remedy based on Section 27–2–28(G), which provides as follows:

> By operation of law, an assignment to the human services department of any and all rights of an applicant for or recipient of medical assistance under the medicaid program in New Mexico or supplemental security income through the social security administration:
>
> (1) is deemed to be made of:
>
> (a) any payment for medical care from any person, firm or corporation, including an insurance carrier; and
>
> (b) any recovery for personal injury, whether by judgment or contract for compromise or settlement[.]

9. Although the court granted Plaintiff's motion for partial summary judgment on the law, questions of fact regarding damages remained outstanding. The parties were able to resolve the outstanding issues by a stipulation that released Sanchez in exchange for her payment of the $50,000 policy limit. Plaintiff and Sanchez also stipulated that Plaintiff suffered $469,607.29 in damages proximately caused by the accident. HSD specifically did not stipulate to damages because HSD considered the amount of damages to be irrelevant to its statutory right of reimbursement.

10. The court entered judgment in accordance with the stipulation and reduced HSD's reimbursement to $2,546.19 after concluding that HSD's right to reimbursement under Sections 27–2–23(B) and –28(G) is a right of subrogation. The amount of reimbursement reflects a deduction for HSD's share of Plaintiff's attorney's fees, which HSD does not challenge on appeal. HSD, however, does challenge the trial court's interpretation and application of Section 27–2–28(G).

*DISCUSSION*

**1. Standard of review.**

11. Interpretation of Section 27–2–28(G) is a question of law which we review de novo. *See State v. Rowell,* 1995 NMSC 086, ¶ 8, 121 N.M. 111, 908 P.2d 1379 (standard of review). The primary purpose of statutory interpretation is to ascertain and give effect to legislative intent. *See Cummings v. X–Ray Assocs.,* 1996 NMSC 035, ¶ 44, 121 N.M. 821, 918 P.2d 1321. The initial inquiry is whether the language of Section 27–2–28(G) is ambiguous, also a question of law subject to de novo review. *See Garcia v. Thong,* 119 N.M. 704, 706, 895 P.2d 226, 228 (1995) (initial question); *New Mexico State Bd. of Educ. v. Board of Educ.,* 95 N.M. 588, 590, 624 P.2d 530, 532 (1981) (standard of review). Absent ambiguity, or special circumstances, the plain meaning of the wording controls and no further interpretation is necessary. *See Garcia,* 119 N.M. at 706, 895 P.2d at 228; *but see State ex rel. Helman v. Gallegos,* 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994) (plain-meaning rule to be employed with caution because "[i]ts beguiling simplicity may mask a host of reasons why [the wording] ... give[s] rise to legitimate differences of opinion").

**2. Argument of the parties.**

12. HSD does not deny that the remedy provided by Section 27–2–23(B) is an equitable remedy as determined in *White.* Rather, HSD asserts that Section 27–2–23(B) has no bearing on their right to the insurance proceeds because Plaintiff assigned the proceeds to HSD by operation of law pursuant to Section 27–2–28(G), which HSD maintains is a separate remedy that facilitates full reimbursement in every case.

13. Plaintiff, however, maintains that Section 27–2–28(G) "is merely an extension of the right of recovery contained at [Section] 27–2–23 and the nature of the State's right of recovery is not modified by the assignment statute." *See* § 27–2–23(B); *White,* 92 N.M. at 190–92, 585 P.2d at 334–336 (construing NMSA 1953, § 13–1–20.1(B)—now § 27–2–23(B)—as providing equitable remedy).

**3. Section 27–2–28(G) is ambiguous.**

14. The parties' differences of opinion signal an ambiguity that we cannot resolve from a plain reading of the statute. *See Key v. Chrysler Motors Corp.,* 121 N.M. 764, 769, 918 P.2d 350, 355 (1996) (discussing

**4**

statutory ambiguity). We note that Section 27-2-28(G) on its face no more mandates full reimbursement through assignment than does Section 27-2-23(B) through subrogation. Both sections state that the remedy is "effective to the extent of the amount of medical assistance actually paid by the department under the medicaid program." This Court in *White* determined that Section 27-2-23(B) requires no particular amount of reimbursement.

15. It would appear that the legislature's use of the same language in the context of assignment would lead to the same conclusion. However, HSD argues otherwise, and claims that assignment by operation of law by its very nature presents a distinct and separate legal remedy to which equitable principles of subrogation do not apply. Here lies the ambiguity.

### 4. We do not interpret "assignment" as requiring full reimbursement under our statutory scheme.

16. HSD relies on *Gutierrez v. City of Albuquerque*, 1995 NMCA 185, 121 N.M. 172, 909 P.2d 732, *cert. granted*, 120 N.M. 828, 907 P.2d 1009 (1995), to argue that "assignment" should be given a plain reading to denote full reimbursement without reduction. *See id.* at 178, 909 P.2d at 738 (construing a reimbursement provision within our Worker's Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1987, as amended)).

17. We do not think that assignment in the context of medicaid reimbursement is as clear a signal of legislative intent. The Worker's Compensation Act reflects a deliberative balance between the interests of employers and employees. *See Singhas v. New Mexico St. Highway Dep't*, 120 N.M. 474, 477, 902 P.2d 1077, 1080 (Ct.App.1995), *aff'd*, 120 N.M. 394, 902 P.2d 76 (1997). Thus, in the field of workers' compensation, the courts are especially reluctant to perform "judicial surgery" on the Act for fear that such an interpretation could upset the Act's intended balance. *See Gutierrez*, 1995 NMCA 185, ¶ 19, 121 N.M. 172, 909 P.2d 732.

18. When the *Gutierrez* court examined the entire Act, and compared our assignment provision to those within the laws of other states, the Court found support for a plain reading: If the legislature had intended otherwise, the legislature would have prescribed a formula for equitable reduction in keeping with other portions of the Act. *Id.* Finally, *Gutierrez* distinguished *White* in part because *White* concerned our state's implementation of a federal mandate that was silent with regard to the amount of reimbursement. *See id.*, 1995 NMCA 185, ¶ 17, 121 N.M. 172, 909 P.2d 732.

19. Therefore, we look for other indicia that the legislature may have intended for assignment to create a new remedy distinct from subrogation when a medicaid recipient recovers funds from liable third parties. Our goal is to ensure that we do not construe the statute to mean something other than what it says. *See id.* (principle underlying plain meaning rule). We begin with the purpose of the statute, *see Montoya v. Mentor Corp.*, 1996 NMCA 067, ¶ 17, 122 N.M. 2, 919 P.2d 410, and draw inferences about the meaning of Section 27-2-28(G) from its composition and structure. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.01 (5th ed. 1992 & Cum.Supp.1996). We also consider applicable federal law, and counterparts from the other states. *See Key*, 121 N.M. at 769, 918 P.2d at 355 (taking similar approach in construing N.M. Motor Vehicle Dealers Franchising Act, §§ 57-16-1 to -16 (Repl.1995)).

20. First and most importantly, both parties agree that the assignment provision was enacted for consistency with federal law. In 1984, Congress required state plans to incorporate assignment of rights as a condition of receiving federal approval of the plan and federal funding. *See* 42 U.S.C. § 1396k (1994); 42 C.F.R. Part 431 (1996) (discussing state organization and general administration); NMSA 1978, § 27-1-3(G) (1987) (designating HSD as agency charged with administering federal funds in accordance with federal welfare law); § 27-1-3(E) (requiring HSD to make changes in administering the program when required by the federal government). Since 1984, persons of legal capacity who have applied for medicaid assistance cannot be eligible for benefits unless

they assign to the State their right of recovery against any third party. *See* 42 U.S.C. 1396k(a)(1)(A); 42 C.F.R. § 433.135 (1996) (basis and purpose of state plan requirements).

21. As HSD notes, assignment of rights became federal law after *White*. *See White*, 92 N.M. at 189–90, 585 P.2d at 333–34 (citing 42 U.S.C. 1396a(a)(25) (1974)). However, the change in federal law did not mandate a greater return to the State than the amount available by subrogation under Section 27–2–23(B). *See Costello on Behalf of Stark v. Geiser*, 85 N.Y.2d 103, 623 N.Y.S.2d 753, 757, 647 N.E.2d 1261, 1265 (1995) (construing 42 U.S.C. § 1396a(a)(25)); 42 C.F.R. § 433.139(f)(1) (providing for suspension or termination of attempted reimbursement when not cost effective). Therefore, the purpose of the Act does not support HSD's reading of assignment as creating a remedy by which HSD would necessarily be reimbursed in full out of funds recovered from liable third parties.

22. Further, before the enactment of Section 27–2–28(G) by 1991 N.M. Laws, ch. 223, § 1, our state plan provided for assignment of rights when there was a potentially-liable third party. *See* 42 C .F.R. § 433.137(c) (federally-mandated assignment became effective for all medical assistance furnished on or after October 1, 1984). Before 1991, HSD's regulations provided that medicaid was the payor of last resort, and that payment of medicaid benefits "must be reduced to the extent that they are payable by any third party." Third Party Liability, N.M. Human Serv. Dep't ISD–Rule 304.8000(A), (E) (promulgated Apr. 1, 1978); *see also* ISD–Rule 304.8000(A)(3) (filed Sept. 9, 1981) (in cases of personal injury to medicaid recipients, HSD would pursue tort liability and recovery from liable third parties).

23. Regulatory amendments in 1989 required medicaid recipients to "assign their rights to recovery of any third party insurance to the state as a condition of eligibility for assistance." *See* Third Party Liability, N.M. Human Serv. Dep't MAD–Rule 304.81 (filed Nov. 8, 1989). Plaintiff was required to assign his right to recover from Sanchez when he applied for. medicaid in 1989.

Thereafter, assignment continued to be an eligibility requirement. *See* Medical Assistance Program Manual, N.M. Human Serv. Dep't MAD–Rule 810.09 (filed SRC 1/1/90), 1 N.M. Reg. No. 3, at 12 (Feb. 15, 1990) (to be eligible, medicaid applicants/recipients required to assign their rights to medical support and payments). The State was required to pursue recovery on the assignment "where the amount of the third party reimbursement the State can reasonably expect to recover exceeds the cost of such recovery." MAD–Rule 810.10. Enactment of Section 27–2–28(G) did not cause any significant changes to these third-party liability provisions. *See* Assignment of Medical Support Rights & Third Party Liability (TPL), N.M. Human Serv. Dep't, MAD–Rules 800.410–.411, 3 N.M. Reg. No. 11, at 42 (June 15, 1992).

24. Second, as Plaintiff contends, we must presume that the legislature was aware of existing law, and enacted a statute consistent with existing law, because the notion of repeal by implication is disfavored. *See Citation Bingo, Ltd. v. Otten*, 1996 NMSC 003, ¶ 21, 121 N.M. 205, 910 P.2d 281. The legislature did not amend Section 27–2–23 with the assignment provision, but instead added a new subsection to Section 27–2–28, which addresses liability for repayment of public assistance. We may infer from context that the legislature did not intend to change the purpose of Section 27–2–23, which is to hold responsible parties liable for medical assistance payments. *See White*, 92 N.M. at 190, 585 P.2d at 334.

25. Additionally, as Plaintiff maintains, we must read Section 27–2–28(G) to achieve internal consistency and to avoid rendering any part of our medicaid scheme superfluous or ineffective. *See Cordova v. Taos Ski Valley, Inc.*, 121 N.M. 258, 910 P.2d 334 (Ct.App. 1995) (discussing principle of statutory construction). We can reconcile Section 27–2–23 with Section 27–2–28(G). Whether by virtue of assignment or subrogation, HSD has a legally-enforceable right to reimbursement from liable third parties. *See St. Joseph Healthcare System v. Travelers Cos.*, 119 N.M. 603, 606, 893 P.2d 1007, 1010 (Ct.App. 1995) (right to collect through assignment constitutes subrogation). "[I]t has been as-

**6**

serted that regardless of whether a transfer is technically called assignment or subrogation or equitable assignment or assignment by operation of law, its ultimate effect is the same: to pass the title to a cause of action from one person to another." 73 Am.Jur.2d *Subrogation* § 4 (1974).

26. HSD notes that assignment in this case is not an assignment of a cause of action but an assignment of Plaintiff's recovery of settlement proceeds from his personal injury action. Section 27–2–28(G) clearly provides for this assignment. However, we disagree with HSD's position that Section 27–2–28(G) is limited to the assignment of proceeds as opposed to the assignment of other related rights. When we read this section in conjunction with the federal medicaid mandate, and our state medicaid regulations and statutory provisions concerning third-party liability, we assume without deciding that the scope of Section 27–2–28(G) is not restricted to the actual funds recovered.

■ 27. We believe Section 27–2–28(G) aids in the implementation of Section 27–2–23. *See Romero Excavation v. Bradley Constr.*, 1996 NMSC 010, ¶ 6, 121 N.M. 471, 913 P.2d 659 (primary goal in reviewing statutes is to give effect to legislative intent, as demonstrated by examining act in its entirety, construing sections in context with other sections). Section 27–2–28(G) vests HSD with the undisputable right to require, as a condition of medicaid eligibility, assignment of settlement proceeds to HSD for reimbursement of medicaid expenditures. This enabling legislation is significant given: (1) the limited authority of administrative agencies, *see Howell v. Heim*, 118 N.M. 500, 504, 882 P.2d 541, 545 (1994) (authority of administrative agency " 'to promulgate rules and regulations must be found in and is limited by statute' ") (quoting *Winston v. New Mexico State Police Bd.*, 80 N.M. 310, 311, 454 P.2d 967, 968 (1969)) and (2) the common law on subrogation: "Historically the common law prevented assignment of a person's cause of action to recovery for personal injuries." *United States Inv. and Dev. Corp. v. Rhode Island Dep't of Human Servs.*, 606 A.2d 1314 (R.I.1992).

28. Also, by virtue of assignment, HSD's right to reimbursement receives greater protection. Once rights are assigned, they cannot be revoked without HSD's permission. *See Romero v. Earl*, 111 N.M. 789, 790–91, 810 P.2d 808, 809–10 (1991) (discussing basic principles of assignment). An assignment of rights enables HSD to assume the recipient's rights against a third party. *See Restatement (Second) of Contracts* § 336(1) (1979).

29. Assignment and subrogation are equally capable of providing reimbursement. However, as the facts of this case demonstrate, not every medicaid recipient will notify HSD of a claim against a third party. By virtue of the assignment, a liable third party with notice, such as Sanchez's insurer, was required to contact HSD. Otherwise, the third party would have been liable to HSD if Plaintiff had been paid in violation of the assignment. *See Romero*, 111 N.M. at 790, 810 P.2d at 809. Likewise, by virtue of the assignment, if Plaintiff had received and retained funds from Sanchez, HSD could have held Plaintiff liable. *See* 6 Am.Jur.2d *Assignments* § 105 (1963). Codification of the assignment provision under Section 27–2–28 contemplates that the medicaid recipient may be liable to HSD for reimbursement out of sums that the recipient received from a third-party tortfeasor. *See White*, 92 N.M. at 189, 585 P.2d at 333 (third-party liability provision does not pertain to recovery of payments from recipient).

30. Finally, the two statutory provisions must be reconciled for consistency with our medicaid scheme. Once Congress mandated assignment of rights to ensure that states would seek reimbursement from third parties, the total amount of reimbursement to the states was expected to increase. *See* 42 C.F.R. § 433.135. In turn, increased returns to the federal program were anticipated because the states are required to share their reimbursements with the federal government. *See* 42 C.F.R. § 433.154(b). Our statutory scheme ensures that the federal government will receive its share of the funds reimbursed under Section 27–2–23. *See* NMSA 1978, § 27–2–24 (1969). However, this provision does not specifically refer to medicaid funds reimbursed pursuant to Sec-

tion 27–2–28(G). Nevertheless, when the two provisions are construed as providing the same remedy, there is no conflict with the current federal mandate.

**5. Our conclusion finds support in comparable medicaid schemes in other states.**

31. When we consider similar arguments made in the context of comparable legislative schemes, *see Gutierrez*, 1995 NMCA 185, ¶ 19, 121 N.M. 172, 909 P.2d 732 (finding support for its conclusion in law of other states), we find that assignment is a common thread. However, assignment does not necessarily mandate full reimbursement. For instance, the state raised a similar argument in *United States Inv. & Dev. Corp.*, based upon a comparable assignment. The state claimed that the assignment agreement constituted a lien on settlement proceeds from a liable third-party that could not be reduced by principles of equity. The Rhode Island Supreme Court, however, determined that the assignment was conventional subrogation subject to equitable reduction. *See* 606 A.2d at 1316–17; *see also Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 928 P.2d 653, 655–56 (Ariz.Ct.App.1996) (statute providing for assignment of medical benefits gave state right of subrogation to enforce recovery of benefits); *Underwood v. Department of Health & Rehabilitative Servs.*, 551 So.2d 522, 525–26 (Fla.Dist.Ct.App.1989) (although statute required assignment of benefits as condition of medicaid eligibility, and enabled the state to file lien for reimbursement against third-party settlement proceeds, court looked beyond lien provision to remainder of statutory section to conclude that reimbursement remedy was based on concept of subrogation with the amount to be determined on a pro rata basis under the particular facts); *Costello*, 623 N.Y.S.2d at 756–57, 647 N.E.2d at 1264–65 (although state subrogated through assignment of rights to the extent of medicaid furnished, court applied equity because statute silent as to full reimbursement); *cf. Kittle v. Icard*, 185 W.Va. 126, 405 S.E.2d 456, 458–60 (1991) (although distinguishable by the court's application of the "made-whole" rule, subrogation controlled right to reimbursement despite assignment of benefits as an eligibility requirement for medicaid).

32. By contrast, in those states where the legislature intended for assignment to provide full reimbursement, the statutory language is very explicit. For instance, after *Underwood*, the Florida Legislature amended its statute in 1990 to provide that:

> Medicaid is to be repaid in full from, and to the extent of, any third-party benefits, regardless of whether a recipient is made whole or other creditors paid. Principles of common law and equity as to assignment, lien, and subrogation are to be abrogated to the extent necessary to ensure full recovery by Medicaid from third party resources....

*Agency for Health Care Admin. v. Associated Indus.*, 678 So.2d 1239, 1244 (Fla.1996) (discussing legislative history of state statute and citing various amendments in provisions governing reimbursement).

33. Likewise, the Indiana Legislature amended its medicaid statute after *Indiana v. Cowdell*, 421 N.E.2d 667 (Ind.Ct.App.1981) concluded that the state was not entitled to full reimbursement under its statutory right of subrogation. *See id.* at 670–71 (discussing subrogation statute). The legislature perfected the state's right to reimbursement by way of a statutory lien. *See Indiana Dep't of Pub. Welfare v. Larson*, 486 N.E.2d 546, 547 (Ind.Ct.App.1985) (setting forth amended statute). Thereafter, the Indiana Court of Appeals determined that the lien statute entitled the state to full recovery because "equitable principles and discretion in determining reimbursement pursuant to a subrogation statute do not apply to reimbursement to the State for the Medicaid benefits." *Id.* at 548.

34. As in *Larson*, the statutory lien appears to be a common means of ensuring complete reimbursement of medicaid expenditures in every case. *See, e.g., Riddell v. California*, 50 Cal.App.4th 1607, 58 Cal. Rptr.2d 555, 556–57 (1996); *Department of Med. Assistance v. Hallman*, 203 Ga.App. 615, 417 S.E.2d 218, 219–20 (1992) (finding lien rights waived); *Shweiri v. Commonwealth*, 416 Mass. 385, 622 N.E.2d 612, 613 n. 2 (1993) (1992 statute cited); *Dale v. Gubin*,

879 S.W.2d 699, 700–01 (Mo.Ct.App.1994); *Turnbow v. State, Dep't of Human Resources, Welfare Div.*, 109 Nev. 493, 853 P.2d 97, 99 (1993); *State, Dep't of Human Servs. v. Allstate Ins. Co.*, 744 P.2d 186, 187 (Okla. 1987) (statute cited); *King v. Oregon Dep't of Human Servs.*, 142 Or.App. 444, 921 P.2d 1326, 1327–28 (1996) (statute cited). These cases illustrate the options that were available to our legislature if mandatory reimbursement in full were intended.

35. Considering the purpose of Section 27–2–28(G), its relation to our statutory scheme, existing law at the time of its enactment, corresponding federal law, and other states's construction of similar legislative schemes, we conclude that "assignment" conveys no right to full reimbursement in every case. Therefore, in this case, the trial court did not err in reducing HSD's claim for reimbursement under the facts presented.

## 6. Plaintiff's damages.

36. We summarily address HSD's claim that the trial court's finding on damages is not supported by substantial evidence. The claim presents a question of law as opposed to an issue of fact. *See Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 185, 848 P.2d 1108, 1112 (Ct.App.1993). As HSD notes, the trial court based its finding on the stipulation. Although HSD did not stipulate to the amount, HSD was a party to the stipulation. The stipulation states that "the parties desire to stipulate to certain facts for the purpose of permitting the court to resolve the claim for equitable reduction of the subrogation claim[.]"

37. During the hearing on Plaintiff's motion for partial summary judgment, HSD indicated that it was willing to attempt a stipulation on the facts to avoid a trial on damages because HSD maintained that the actual amount of damages was immaterial to its claim. The stipulation enabled the court to enter final judgment and to expedite HSD's appeal on the law. Although HSD submitted proposed findings of fact and conclusions of law in support of its legal position, HSD did not address the matter of damages.

38. By declining to pursue its right to an evidentiary hearing on damages, we conclude that HSD waived its right to challenge the sufficiency of the evidence relied on by the court to reduce HSD's claim. *See Cockrell v. Cockrell*, 117 N.M. 321, 324, 871 P.2d 977, 980 (1994) (discussing waiver of challenge to sufficiency of evidence when party failed to tender specific finding or otherwise call trial court's attention to the problem); *cf. State v. Latham*, 83 N.M. 530, 532, 494 P.2d 192, 194 (Ct.App.1972) (party may waive disqualification of judge by taking actions inconsistent therewith).

39. Alternatively, we conclude that the stipulation was sufficient evidence to support the trial court's finding because it was the only evidence available to the court once the parties agreed not to proceed to trial. Without this evidence, the trial court could not have proceeded to judgment. Thus, the finding is affirmed. *See Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996) (reviewing court will not disturb on appeal factual findings supported by substantial evidence).

## CONCLUSION

40. Based on the foregoing, we affirm the trial court.

41. **IT IS SO ORDERED.**

APODACA and BUSTAMANTE, JJ., concur.