**Certiorari Granted, No. 31,612, April 20, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-041**

**Filing Date: February 26, 2009**

**Docket No. 28,135**

**THERESA ORTIZ, for the estate**
**of ROBERT BAROS, deceased,**

   **Worker-Appellant,**

**v.**

**OVERLAND EXPRESS, uninsured, and**
**WCA UNINSURED EMPLOYERS' FUND,**

   **Employer/Insurer-Appellees.**

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Gregory D. Griego, Workers' Compensation Judge**

Jeffrey C. Brown
Albuquerque, NM

for Appellant

Richard Nelson
Albuquerque, NM

for Pro Se Employer/Appellee

Gary K. King, Attorney General
Richard J. Crollett, Special Assistant Attorney General

for Appellee WCA Uninsured Employers' Fund

**OPINION**

**VIGIL, Judge.**

1

**{1}** Worker's estate appeals from a compensation order awarding no compensation to the estate. The Workers' Compensation Judge (WCJ) concluded that Worker's use of methamphetamine and amphetamine was the sole cause of his death and benefits are therefore barred by NMSA 1978, § 52-1-12 (1989) of the Worker's Compensation Act (WCA). We hold that, as it relates to amphetamine and methamphetamine, this statutory defense was abolished by the Legislature in 1972. We also reject Employer's argument that benefits are barred because Worker was acting outside the course of his employment when he died and because Worker willfully suffered his death. We therefore reverse.

**BACKGROUND**

**{2}** Worker had a regular full-time day job with a construction company in addition to his part-time job with Overland Express (Employer), where he was employed as a delivery service driver/courier. On October 29, 2004, Worker went to work at his first job for eight hours until 5:00 p.m. Thereafter, Worker came home, had dinner, spent time with his family, and slept for an undetermined number of hours before going to work for Employer at either 10:00 p.m. or 12:00 midnight. Worker then drove Employer's delivery van all night until the accident, which occurred at 7:00 a.m. the next morning.

**{3}** While driving northbound in the left lane on Interstate 25, Worker appeared to be attempting to pass another vehicle when his van slowly crossed from the left lane into the right lane, struck the rear of the vehicle traveling in the right lane, left the highway, and rolled over at least three times. The evidence was that Worker did not apply the brakes to the van before it hit the other vehicle and drifted off the road. Worker was pronounced dead at the scene.

**{4}** The police officer who investigated the accident concluded that based on the time of day, the witness's description of the van's movement, and the lack of braking, Worker was "unaware of the pending collision" and was either asleep, unable to avoid making contact with witness's vehicle, or was otherwise preoccupied at the time of the accident. The Office of the Medical Investigator concluded that the cause of death was multiple blunt force injuries. The toxicology report revealed that Worker's femoral blood contained 0.08 mg/l of amphetamine, 0.78 mg/l of methamphetamine, and 0.03 mg/l of morphine.

**{5}** Employer did not have workers' compensation insurance at the time of Worker's death. Therefore, as the mother of Worker's two minor children, Plaintiff filed a claim for benefits with the Uninsured Employers' Fund (UEF), followed by a Workers' Compensation Complaint with the Workers' Compensation Administration against Employer and UEF. Employer and UEF (which we collectively hereinafter refer to as Employer) asserted in relevant part that benefits should be denied or reduced because the proximate cause of Worker's death was due to Worker's use of narcotic drugs, legal or illegal and was willfully occasioned by him. Following trial, the WCJ filed a compensation order stating that Worker's accident "was occasioned solely by Worker's use of methamphetamine and amphetamine," those drugs are "narcotic drug[s]," and "the use of [those narcotic] drug[s]

2

was the exclusive proximate cause of the accident." The WCJ concluded that Plaintiff is not entitled to benefits because "the sole cause of Worker's accident resulting in death was illegal drug use, pursuant to Section 52-1-12." Plaintiff appeals.

## ANALYSIS

**{6}** Plaintiff argues that substantial evidence does not support the WCJ finding that drug use was the sole cause of Worker's accident. Plaintiff argues that because fatigue also contributed to the accident, NMSA 1978, Section 52-1-12.1 (2001) of the WCA is applicable, and it provides for a ten percent reduction of the compensation award rather than a complete bar. Employer counters that substantial evidence supports the WCJ finding that Worker's injury was occasioned solely by Worker's methamphetamine and amphetamine use, and Plaintiff is therefore barred from receiving benefits pursuant to Section 52-1-12. In the alternative, Employer argues: (1) that Plaintiff is not entitled to benefits under NMSA 1978, Section 52-1-28 (1987) because Worker was "acting outside the course and scope of his employment" at the time of his death; and (2) that benefits are barred by NMSA 1978, Section 52-1-11 (1989) because Worker willfully suffered his death.

### A.     Applicability of Section 52-1-12

**{7}** In the course of determining whether substantial evidence supports a finding that Plaintiff's claim is barred by Section 52-1-12, it became apparent that there was an issue as to whether Section 52-1-12 applies to methamphetamine and amphetamine use. Accordingly, we asked the parties to submit simultaneous supplemental briefs addressing whether Section 52-1-12 applies to methamphetamine or amphetamine use and whether we can raise this issue sua sponte.

**{8}** In our interpretation of the WCA, we engage in de novo review. *See Howell v. Marto Elec.*, 2006-NMCA-154, ¶ 16, 140 N.M. 737, 148 P.3d 823 ("The interpretation of the Workers' Compensation Act and associated regulations is a question of law that we review de novo."). After analyzing the plain language of the statute and its history, we are compelled to conclude that Section 52-1-12 is not applicable in this case.

**{9}** Section 52-1-12 is titled, "Compensation prohibited when worker under influence of certain drugs." It was originally adopted in 1971 and provided:

> No compensation is payable from any employer under the provisions of the Workmen's Compensation Act if the injury to the person claiming compensation was occasioned solely by the person being under the influence of a *depressant, stimulant or hallucinogenic drug as defined in the New Mexico Drug and Cosmetic Act* or under the influence of a *narcotic drug as defined in the Uniform Narcotic Drug Act*.

1971 N.M. Laws, ch. 55, § 1 (emphasis added). Section 52-1-12 was then amended in 1989 by 1989 N.M. Laws, ch. 263, Section 9 to state:

3

No compensation is payable from any employer under the provisions of the Workers' Compensation Act [this article] if the injury to the person claiming compensation was occasioned solely by the person being under the influence of a *depressant, stimulant or hallucinogenic drug as defined in the New Mexico Drug, Device and Cosmetic Act* or under the influence of a *narcotic drug as defined in the Controlled Substances Act*.

(Emphasis added.). This is the version of the statute that is currently in effect.

**{10}** A comparison of the 1971 and 1989 versions of the statute shows that in 1989, minor stylistic changes were made near the beginning of the section, and that "New Mexico Drug, Device and Cosmetic Act" (DDCA) was substituted for "New Mexico Drug and Cosmetic Act" and "Controlled Substances Act" was substituted for "Uniform Narcotic Drug Act."

**{11}** The plain language of Section 52-1-12 requires us to refer to two other statutes to determine whether methamphetamine and amphetamine fall under its provisions: the DDCA, NMSA 1978, §§ 26-1-1 to -26 (1967, as amended through 2008) and the Controlled Substances Act, NMSA 1978, §§ 30-31-1 to -41 (1972, as amended through 2008).

**{12}** We first look to whether methamphetamine or amphetamine is described in the DDCA as a "depressant, stimulant or hallucinogenic drug." The DDCA was originally enacted in 1967, as the "New Mexico Drug and Cosmetic Act." 1967 N.M. Laws, ch. 23, § 1. The "New Mexico Drug and Cosmetic Act" had a definition of the phrase "depressant, stimulant or hallucinogenic drug," and that definition included amphetamine. The definition, codified at NMSA 1953, Section 54-6-27(F)(2) (1967, as amended through 1971) (repealed 1972), included

any drug which contains any quantity of amphetamine or any of its optical isomers; any salt of amphetamine or any salt of an optical isomer of amphetamine; or any substance which the federal act has found to be, and by regulation, designated as habit-forming because of its stimulant effect on the central nervous system[.]

However, this definition was repealed and permanently removed from the statute in 1972. 1972 N.M. Laws, ch. 84, § 43. In 1987, the name of the statute was changed to the DDCA. 1987 N.M. Laws, ch. 270, § 2. The DDCA is now codified at Sections 26-1-1 to -26 and it has no definitions for the words or phrase "depressant, stimulant or hallucinogenic drug." *See id.*

**{13}** We now look to whether the definition of a "narcotic drug" in the Controlled Substances Act includes methamphetamine or amphetamine which would bring Section 52-1-12 into play. The Controlled Substances Act defines a "narcotic drug" but that definition does not include methamphetamine or amphetamine. *See* § 30-31-2(O). Furthermore, the legislative history of the Controlled Substances Act reveals that neither methamphetamine nor amphetamine has ever been included in its definition of "narcotic drug." NMSA 1953, § 54-7-2 (1935, as amended through 1971) (repealed 1972).

4

**{14}**     When the Legislature originally enacted Section 52-1-12 in 1971, it clearly intended to include amphetamine in its prohibition because Section 52-1-12 referred to the New Mexico Drug and Cosmetic Act for a definition of its term "depressant, stimulant, or hallucinogenic drug," and the New Mexico Drug and Cosmetic Act defined that term.  What the Legislature intended after the 1972 amendment permanently removed this definition from the New Mexico Drug and Cosmetic Act is not so clear because Section 52-1-12 continued to refer to the New Mexico Drug and Cosmetic Act to define the phrase "depressant, stimulant, and hallucinogenic drug."  Adding to this confusion is the fact that in 1989, Section 52-1-12 was amended to specifically refer to the DDCA to define the phrase "depressant, stimulant or hallucinogenic drug" when the DDCA did not contain a definition of those words or that phrase.  Finally, we note that Section 52-1-12.1 was enacted in 2001, long after the definition was permanently removed from the New Mexico Drug and Cosmetic Act in 1972, which then became the DDCA in 1987.  In pertinent part, Section 52-1-12.1 provides that the compensation payable to a worker under the WCA shall be reduced ten percent in cases in which the injury to or death of a worker is not "occasioned solely by drug influence as described in Section 52-1-12," but by "being under the influence of a depressant, stimulant or hallucinogenic drug as defined in the DDCA or under the influence of a narcotic drug as defined in the Controlled Substances Act."  We presume that when the Legislature enacts a statute it is aware of existing statutes.  *See State v. Maestas*, 2007-NMSC-001, ¶ 21, 140 N.M. 836, 149 P.3d 933.  Therefore, we cannot presume that after 1972, the Legislature intended to include methamphetamine and amphetamine in the definition of "depressant, stimulant, and hallucinogenic drug" in Section 52-1-12 and Section 52-1-12.1.

**{15}**     Reading methamphetamine and amphetamine into these statutes requires us to engage in impermissibly broad construction.  In analogous cases we have refused to extend the scope of statutes through such a broad construction.  *See State v. Powels*, 2003-NMCA-090, ¶¶ 9-11, 134 N.M. 118, 73 P.3d 256 (concluding that it is for the Legislature and not the judiciary to determine prohibited actions and define crimes through statutes, in a case where the State argued that public policy supported a broad interpretation of a criminal statute that would have expanded the statute's application beyond its plain meaning); *State v. Leiding*, 112 N.M. 143, 145-46, 812 P.2d 797, 799-800 (Ct. App. 1991) (holding that "in the absence of more precise or clearer statutory language," this Court would not broadly construe a criminal statute to apply to conduct that was not specifically prohibited and that "legislative therapy, not judicial surgery" was required to make the conduct fall under the statute).  Workers' Compensation cases require careful construction.  "The Worker's [sic] Compensation Act reflects a deliberative balance between the interests of employers and employees.  Thus, in the field of workers' compensation, the courts are especially reluctant to perform 'judicial surgery' on the Act for fear that such an interpretation could upset the Act's intended balance."  *Kahrs v. Sanchez*, 1998-NMCA-037, ¶ 17, 125 N.M. 1, 956 P.2d 132 (citations omitted).  We have considered the arguments made by Employer to somehow construe the statutes to include methamphetamine and amphetamine use in the provisions of Sections 52-1-12 and 52-1-12.1, but we conclude we cannot do so without ourselves acting as the Legislature.

**{16}**     The remaining question is whether we can raise this issue sua sponte.  The parties agree

that "jurisdictional" issues may be raised sua sponte on appeal after briefing has been completed. Rule 12-216(B) NMRA sets forth exceptions to the requirement that issues must be presented to the trial court before they can be raised on appeal. The Rule states: "This rule shall not preclude the appellate court from considering jurisdictional questions or, in its discretion, questions involving: (1) general public interest; or (2) fundamental error or fundamental rights of a party." Plaintiff argues that *Pineda v. Grande Drilling Corp.*, 111 N.M. 536, 539, 807 P.2d 234, 237 (Ct. App. 1991) gives us authority to consider the issue for the first time on appeal as jurisdictional pursuant to Rule 12-216(B). We agree. In *Pineda* we noted that "there is no easy test to determine whether a question is jurisdictional or involves general public interest, fundamental error, or fundamental rights of a party." *Id.* at 539, 807 P.2d at 237. In that case the question presented was whether a rule of the Workers' Compensation Division (WCD) allowing attorney fees to be awarded was applicable because the rule came into effect while the case was pending before the WCD. *Id.* at 538-39, 807 P.2d at 236-37. We held that the new rule could not be applied to that case. *Id.* at 540, 807 P.2d at 238. Further, since the error in awarding attorney fees pursuant to the new rule went "to the heart of the WCD's authority," *id.*, we considered the error as "a jurisdictional defect that can be raised for the first time on appeal." *Id.* We conclude that the issue before us in this case is "jurisdictional" in the same sense. The WCJ had no authority to apply a non-existent defense to Plaintiff's claim and thereby reject the claim. Further, no additional facts needed to be developed at trial beyond those that are already before us to decide whether Employer's defense exists under our statutes. We therefore conclude that under *Pineda*, the issue before us can be raised for the first time on appeal as a jurisdictional issue.

**{17}** We hold that neither Section 52-1-12 nor Section 52-1-12.1 constitutes a defense in this case because neither methamphetamine nor amphetamine is defined as a "depressant, stimulant, or hallucinogenic drug" in the DDCA or as a "narcotic drug" in the Controlled Substances Act. We leave it to the Legislature to modify Section 52-1-12 and Section 52-1-12.1 to include methamphetamine and amphetamine in their provisions if that is its intent. Because we hold that neither Section 52-1-12 nor Section 52-1-12.1 applies, these defenses do not apply to the present case, and we do not reach the issue of whether there was sufficient evidence to support the WCJ's determination that Section 52-1-12 barred Plaintiff from recovering benefits.

**{18}** We appreciate that the result here may appear anomalous. We also appreciate that the Legislature likely simply made a mistake of omission during the amendment process for the WCA, the DDCA and the Controlled Substances Act. However, the resulting language is specific, unambiguous, and clear. We see no reasonable room for interpretation. To create the effect or result which Employer asks would require us to literally add language to the WCA and the DDCA. We cannot do so.

## B.    Section 52-1-28:  Course of Employment

**{19}** Employer argues that, pursuant to Section 52-1-28, Plaintiff is barred from receiving benefits because Worker was "acting outside the course and scope of his employment" at the time of his death. Section 52-1-28 states in relevant part that "[c]laims for workers' compensation shall be allowed only . . . when the worker has sustained an accidental injury

6

arising out of and in the course of his employment." Employer argues that Worker's violation of Employer's drug policy, which prohibited the use of illegal drugs while on the job, removed the accident from the protection of the Act. This argument also requires us to construe the applicable statutes, and our standard of review is de novo. *See Howell*, 2006-NMCA-154, ¶ 16.

**{20}** The cases cited by Employer to support its position, *Lukesh v. Ortega*, 95 N.M. 444, 623 P.2d 564 (1980), and *Walker v. Woldridge*, 58 N.M. 183, 268 P.2d 579 (1954), are distinguishable from the present case. In those cases, the workers were barred from receiving benefits because they violated specific instructions that limited the scope or sphere of their authorized work, thus taking their actions outside the scope of their authorized work. *See Lukesh*, 95 N.M. at 445, 623 P.2d at 565 (holding that a worker with a preexisting back injury, who had been specifically instructed not to lift a troweling machine because of this injury, and whose job responsibilities did not include any heavy lifting, could not recover workers' compensation benefits after he reinjured his back by lifting the troweling machine); *Walker*, 58 N.M. at 185, 268 P.2d at 580 (holding that a service station worker who violated specific instructions not to disturb a tear gas gun in a vehicle could not recover benefits after he was blinded when the worker shot himself in the face with the tear gas gun). The workers in those two cases were injured because they engaged in actions that were outside the scope of their authorized work. *See Walker*, 58 N.M. at 185, 268 P.2d at 580 (stating that the worker "must be held to stand the risk of the injury received by him which proximately resulted from an act of his own which had no reasonable relation to the employment"). In the present case, Worker was injured while engaging in his authorized work, driving a delivery van for Employer.

**{21}** Worker's drug use in this case did not transform the performance of his authorized work into an act with "no reasonable relation" to his employment. *See id.* We hold that Section 52-1-28 does not bar Plaintiff from receiving compensation benefits.

## C.    Section 52-1-11:  Willfully Suffered Injury

**{22}** Employer also claims that Worker willfully suffered his death, thus barring Plaintiff from receiving benefits pursuant to Section 52-1-11. This statute provides in relevant part, "[n]o compensation shall become due or payable from any employer . . . in event such injury was . . . willfully suffered by him[.]" Employer argues that Worker willfully suffered his death because he took methamphetamine and amphetamine with knowledge of the dangers associated with drug use and operating a motor vehicle.

**{23}** Once again, since this argument requires us to engage in statutory interpretation, our review is de novo. *See Howell*, 2006-NMCA-154, ¶ 16. In interpreting statutes, "we strive to read related statutes in harmony so as to give effect to all provisions." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. Additionally, when two statutes deal with the same subject matter, one general and one specific, the specific statute will control. *Stinbrink v. Farmers Ins. Co. of Ariz.*, 111 N.M. 179, 182, 803 P.2d 664, 667 (1990).

**{24}**     Section 52-1-12 and Section 52-1-12.1, as the more specific statutes, represent the Act's approach to circumstances in which a worker is injured or killed on-the-job while under the influence of drugs.  Section 52-1-12.1 results in a ten percent reduction in the compensation award, while Section 52-1-11 provides employers with a complete defense.  If employers are permitted to apply Section 52-1-11 to all drug use, an insurmountable conflict with Section 52-1-12.1 will result.  It is contrary to logic to presume that the Legislature intended to allow employers to avoid the obligation under Section 52-1-12.1 to pay ninety percent of a compensation award when drug use is a contributing cause of injury by allowing them to argue that a worker's drug use resulted in a willfully suffered injury.  Because "our task is to construe statutes in harmony whenever possible," *State v. Smith*, 2004-NMSC-032, ¶ 13, 136 N.M. 372, 98 P.3d 1022, we are not persuaded that Section 52-1-11 should be applied to drug use.[1]

**CONCLUSION**

**{25}**     For the above reasons, we reverse the WCJ's compensation order and remand for further proceedings

**{26}     IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**I CONCUR:**

_____

[1]We encounter a similar problem with the intoxication provision of Section 52-1-11, which provides employers with a complete defense when a worker's injury is "occasioned by" intoxication.  Treating methamphetamine and amphetamine use as a form of intoxication, however, we encounter another conflict between Section 52-1-11 and Section 52-1-12.1.  Case law has interpreted the phrase "occasioned by" in Section 52-1-11 as a requirement that the employer prove that intoxication was the "proximate cause" of the accident. *See Salazar v. City of Santa Fe*, 102 N.M. 172, 178, 692 P.2d 1321, 1327 (Ct. App. 1983).  The uniform jury instruction on causation, UJI 13-305 NMRA, states that an act is a "proximate cause" of an injury if it "contributes to bringing about the injury."  Furthermore, a proximate cause "need not be the only explanation for the injury, nor the reason that is nearest in time or place," but will be sufficient "if it occurs in combination with some other cause to produce the result." *Id.*  This can be interpreted to mean that the requirement in Section 52-1-11 that the injury be "occasioned by" intoxication will be met if an employer is able to show that intoxication was a contributing cause to the injury.  While Section 52-1-11 provides a complete defense, Section 52-1-12.1 provides employers with a partial defense (ten percent reduction of the award) when intoxication is a "contributing cause" to a worker's injury or death.  Under this analysis these two statutes are irreconcilable in their results.  We again leave it to the Legislature to remedy this potential conflict.

MICHAEL D. BUSTAMANTE, Judge

JAMES J. WECHSLER, Judge (dissenting)

WECHSLER, Judge (dissenting).

**{27}** I respectfully dissent from the majority opinion. I disagree with Part A and its exclusion of the stimulants methamphetamine and amphetamine from use in Section 52-1-12 of the WCA. Because I believe that the Legislature intended to include methamphetamine and amphetamine in the DDCA and, thus, intended for those drugs to be used in application of Section 52-1-12 of the WCA, I would reach the question raised by Plaintiff of whether Worker's use of illegal drugs was the sole cause of the accident that caused his death. I believe that sufficient evidence supports the WCJ's determination that Worker's use of illegal drugs was the sole cause, and I would thus affirm the WCJ's decision. In so affirming, I would not reach the questions analyzed in Parts B and C of the majority opinion.

**{28}** The majority cites *Maestas*, 2007-NMSC-001, ¶ 21, for the proposition that the Legislature is presumed to be aware of existing statutes when it enacts new statutes. I agree with the majority on this point. However, *Maestas* also evaluated the legislative history and the statutory context in which the relevant statute was enacted to arrive at its conclusion. *Id.* ¶¶ 22, 24. *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 352-53, 871 P.2d 1352, 1358-59 (1994), guides us in those situations, such as the present one, in which a statute's plain reading becomes muddled when reviewing statutory context and legislative history. "[I]f the meaning of a statute is truly clear[,] it is of course the responsibility of the judiciary to apply the statute as written and not to second-guess the [L]egislature's selection from among competing policies." *Id.* at 352, 871 P.2d at 1358. However, *Gallegos* warns that "courts must exercise caution in applying the plain meaning rule [because i]t's beguiling simplicity may mask a host of reasons why a statute . . . may for one reason or another give rise to legitimate . . . differences of opinion concerning the statute's meaning." *Id.* at 353, 871 P.2d at 1359. "In such a case, it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute." *Id.* Our Supreme Court's warning in *Gallegos* speaks directly to the situation at hand.

**{29}** The plain meaning of Section 52-1-12 indicates that there is a definition of "depressant, stimulant or hallucinogenic drug" in the DDCA that would prohibit an employer from paying compensation under the WCA. Section 52-1-12 ("No compensation is payable from any employer . . . if the injury to the person claiming compensation was occasioned solely by the person being under the influence of a depressant, stimulant or hallucinogenic drug as defined in the [DDCA]."). However, as discussed in the majority opinion, the DDCA no longer expressly includes such a definition of "depressant, stimulant or hallucinogenic drug." The majority therefore states that to read a nonexistent definition of "depressant, stimulant, and hallucinogenic drug" into Sections 52-1-12 and 52-1-12.1 would be to engage in "impermissibly broad construction." Thus, the majority excludes methamphetamine and amphetamine from use

9

in those sections.

{30}    Although I agree that it is not the place of the courts to act as legislating bodies, I do not agree that including methamphetamine and amphetamine as stimulants in the application of Sections 52-1-12 and 52-1-12.1 would be to do so.  Section 52-1-12 is a statute that appears clear in its meaning when it bars recovery under the WCA if a "depressant, stimulant or hallucinogenic drug," as defined in the DDCA, is the sole cause of an accident.  However, the Legislature's removal of the definition of "depressant, stimulant or hallucinogenic drug" from the predecessor to the DDCA has presented "an apparent conflict between the statutory wording and the overall legislative intent."  *See Gallegos*, 117 N.M. at 353, 871 P.2d at 1359.  As such, we need to discern and give effect to the Legislature's intent in the statutes.  *See id.*

{31}    Not only is the legislative intent of Section 52-1-12 clear, but the Legislature, when returning to Section 52-1-12 in 1989, did not change the reference to the DDCA, even though it had previously removed the definition referenced.  Through Section 52-1-12, the Legislature's intent continued to be that if one of the drugs within the definition caused an accident, recovery under the WCA would be barred notwithstanding the previous removal of the definition.  The Legislature's subsequent enactment of Section 52-1-12.1, which also references the previously removed definition, further demonstrates the Legislature's intent that the removed definition would still be applied to the WCA.

{32}    I believe that the Legislature committed oversight when it removed the specific definitions referred to in Section 52-1-12 from the predecessor to the DDCA and did not correspondingly revise Section 52-1-12.  Indeed, it apparently referred to the DDCA definitions by oversight in 1989 and 2001.  However, I do not read the Legislature's failure to revise Section 52-1-12 to alter its intent or to remove the effect of Section 52-1-12 in the present case.

{33}    It is our responsibility to evaluate the statutes together to give effect to the legislative intent.  *See Gallegos*, 117 N.M. at 353, 871 P.2d at 1359.  In doing so, I first view the plain legislative intent stated in the language of Section 52-1-12 to be paramount.  The reference to the definitional language of the DDCA is ancillary; it merely provides the method of fulfilling the stated intent.  Second, although we are frustrated in our ability to directly follow the Legislature's reference to the definitions of the DDCA, there is sufficient linkage between the statutes to allow continued application of the definition of "stimulant" in Section 30-31-7(A)(3) to be applied to the WCA.

{34}    Although the DDCA does not include "depressant, stimulant or hallucinogenic drug" within its definitions, its definitions do include "controlled substances." Section 26-1-2(D).  A controlled substance is defined as "a drug, substance or immediate precursor enumerated in Schedules I through V of the Controlled Substances Act [Sections 30-31-6 to -10]." Section 26-1-2(D). Specifically, Section 30-31-7(A)(3) includes as controlled substances the stimulants "(a) amphetamine, its salts, optical isomers and salts of its optical isomers; [and] (c) methamphetamine, its salts, isomers and salts of isomers."  Evaluating the statutes together to "effectuate the legislative intent," *Gallegos*, 117 N.M. at 353, 871 P.2d at 1359, I conclude that,

10

although the Legislature removed the definition of "depressant, stimulant or hallucinogenic drug" from the predecessor to the DDCA, the DDCA's reference to the schedules of the Controlled Substances Act, which include a definition of the stimulants methamphetamine and amphetamine, is nevertheless sufficient for those drugs to be included in the DDCA and, by way of that link, in Section 52-1-12. Reliance on the technicality that the definition no longer exists in the DDCA does not effectuate the Legislature's intent when it referred to the nonexistent definition in Section 52-1-12. It did not repeal Section 52-1-12. As such, I would reach the merits of Plaintiff's argument that there was not substantial evidence to support the WCJ's conclusion that "the sole cause of Worker's accident resulting in death was illegal drug use, pursuant to Section 52-1-12."

**{35}**     We review for substantial evidence under a whole record standard of review. *Leonard v. Payday Prof'l*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177. Although in analyzing the whole record, we consider evidence both favorable and unfavorable to the WCJ's finding, we may not substitute our judgment for that of the WCJ, and we must view the evidence "in the light most favorable to the [WCJ's] decision." *Id.* (internal quotation marks and citation omitted). "We will affirm the [WCJ's] decision if, after taking the entire record into consideration, there is evidence for a reasonable mind to accept as adequate to support the conclusion reached." *Id.* (internal quotation marks and citation omitted).

**{36}**     The WCJ found that the sole cause of the accident resulting in Worker's death was Worker's illegal use of methamphetamine and amphetamine. Don C. Fisher, M.D., issued a report supporting this finding. Plaintiff posits that Worker was suffering from fatigue at the time of the accident that combined with his use of the illegal drugs to cause the accident. Plaintiff's expert witness, Eugenia M. Brazwell, Ph. D., stated her opinion that she could not say within a reasonable degree of probability that the drugs in Worker's system were the sole cause of the accident. She later qualified her opinion to state that she could not "say to a hundred percent certainty it was caused by the level of drugs." *See Levario v. Ysidro Villareal Labor Agency*, 120 N.M. 734, 738, 906 P.2d 266, 270 (Ct. App. 1995) (stating that an expert's testimony need only "reasonably connote the statutory requirement").

**{37}**     Dr. Brazwell testified that Worker was probably in a somnolent state, which, because he did not brake, was consistent with someone who was unconscious. She testified that Worker had taken high doses of methamphetamine and amphetamine, 30 mg. or more.

**{38}**     Dr. Brazwell did not, however, directly testify about the effect of the drugs in Worker's system. Her concern was that she could not ascertain the timing of Worker's drug use. She did state that methamphetamine has an initial stimulant effect and that if Worker had taken the initial dose before or after he went to his job with Employer, the drug would have relieved his fatigue, exhaustion, and sleepiness. She further stated that high doses of methamphetamine over a period of days will eventually result in an inability to stay awake. She said that it was possible that Worker was a "binge user," which is described in the scientific literature that Dr. Brazwell relied upon in forming her opinions as taking place over two or more days and eventually leading to a compulsion to sleep or an inability to stay awake. Dr. Brazwell also said that blood

11

concentrations of more than 0.20 milligrams would indicate methamphetamine abuse.  Worker had a level of 0.78 milligrams at the time of his death.

**{39}**    The WCJ was confronted with the difficult task of determining whether Worker's fatigue was a contributing cause of the accident.  Indeed, Worker had ample reason to suffer fatigue.  However, with the substantial level of blood concentrations of methamphetamine and the testimony concerning the effects of methamphetamine and amphetamine abuse, the WCJ could reasonably conclude that Worker had consumed methamphetamine over a period of time, that the methamphetamine Worker consumed would have eventually resulted in a compulsion to sleep or an inability to stay awake, and that it was this consumption of the methamphetamine, rather than fatigue, that caused Worker to lose consciousness or fall asleep and was, thus, the sole cause of the accident.  I believe that there was substantial evidence in the record as a whole to support the WCJ's decision.

**{40}**    I therefore respectfully dissent.

_____

**JAMES J. WECHSLER, Judge**

**Topic Index for *Ortiz v. Overland Express*, No. 28,135**

| **AE** | **APPEAL AND ERROR** |
| AE-SS | Sua Sponte Issue on Appeal |

| **ST** | **STATUTES** |
| ST-IP | Interpretation |

| **WC** | **WORKERS COMPENSATION** |
| WC-CE | Course of Employment |
| WC-IN | Intoxication |
| WC-WG | Workers' Compensation, General |