709 S.E.2d 130

**Shannon HUTCHINSON, Personal Representative of the Estate of Stephen F. Ney, a/k/a Steve F. Ney, Respondent,**

v.

**LIBERTY LIFE INSURANCE COMPANY, Appellant.**

No. 4820.

Court of Appeals of South Carolina.

Heard Feb. 8, 2011.
Decided April 20, 2011.
Rehearing Denied May 31, 2011.

Kevin K. Bell and Rebecca A. Roser, both of Columbia, for Appellant.

Kenneth C. Anthony, Jr., of Spartanburg, for Respondent.

PER CURIAM.

Liberty Life Insurance Co. (Liberty Life) denied life insurance proceeds to Stephen Ney's beneficiary after toxicology reports reflected the presence of methamphetamines in Ney's blood when he was killed in a single vehicle accident. Shannon Hutchinson, Ney's daughter and beneficiary, sued Liberty Life for the insurance benefits arguing the policy exclusion for injury resulting from an insured being "under the influence of any narcotic" did not apply to Ney's claim because methamphetamine is not a narcotic. The circuit court granted summary judgment to Hutchinson on the ground that

methamphetamine is not a narcotic within the definition of the insurance policy exclusion.

On appeal, Liberty Life argues the circuit court erred in granting summary judgment to Hutchinson when (1) the circuit court adopted a specialized medical definition of the term "narcotic" in the context of an insurance policy written for laypersons, as opposed to the plain and ordinary meaning of "narcotic" as understood by laypersons, and (2) the operative language of the Liberty Life policy exclusion providing that benefits will not be payable when the insured is "under the influence of any narcotic" was taken verbatim from the South Carolina Insurance Code. We reverse the grant of summary judgment and remand for further proceedings.

## FACTS/PROCEDURAL HISTORY

Ney purchased an accidental death insurance policy from Liberty Life in connection with a mortgage on property he owned in Inman, South Carolina. The policy, effective October 1, 2006, provided it would pay off the balance on Ney's mortgage in the event of Ney's accidental death. Two days after the policy came into effect, on October 3, 2006, Ney was killed as a result of driving his tractor-trailer off an interstate highway directly into a bridge abutment.[1] The death certificate listed the cause of death as blunt force trauma to the chest in connection with a motor vehicle crash, but it also listed methamphetamine use under "other significant conditions contributing to death." A coroner's inquest determined the manner of death to be an accident.

In her capacity as personal representative of her father's estate, Hutchinson filed a claim for insurance proceeds (the unpaid balance on the mortgage) after Ney's death. Liberty Life refused to pay any benefits due pursuant to the accidental death policy, and Hutchinson lost Ney's home due to foreclosure. Hutchinson brought suit against Liberty Life for a declaratory judgment that she was entitled to all proceeds payable under the policy, for bad faith, and for violation of the

---

1. Dr. Barry Logan reviewed the accident reconstruction report and submitted an affidavit noting there was no evidence of braking on the roadway or on the 200+ feet of median Ney traveled before the point of impact with the bridge support.

South Carolina Unfair Trade Practices Act.[2] Liberty Life answered, noting the insurance company denied benefits after an investigation revealed "Insured's illegal drug use contributed to his death" and the policy contained an exclusion for "illegal drug use." Hutchinson moved for summary judgment on all three claims, and the circuit court conducted a hearing on the motion.

During the hearing, Hutchinson presented an affidavit from Dr. Donald O. Allen. Dr. Allen noted narcotic drugs are those drugs that induce pain relief, drowsiness, sleep, and similar states of stupor. In contrast, Dr. Allen stated methamphetamines are stimulants that induce wakefulness, alertness, focus, and a heightened sense of awareness. Therefore, Dr. Allen opined that methamphetamine is not a narcotic drug.

Hutchinson's counsel argued the South Carolina Legislature repeatedly separates narcotics from other controlled substances in our state's code. *See, e.g.,* S.C.Code Ann. §§ 17–13–140, 44–53–210 (2002 & 2003). Hutchinson also relied on a Court of Appeals case from New Mexico (*Ortiz v. Overland Express,* 146 N.M. 170, 207 P.3d 1147, 1150–51 (N.M.Ct.App. 2009)) for the proposition that methamphetamines are not narcotic drugs.[3]

Liberty Life noted Ney's blood concentration of methamphetamine was ten times greater than the threshold for impairment. Liberty Life submitted affidavits from two medical experts who described Ney's methamphetamine blood concentration as being in the toxic to lethal range. Liberty Life's medical experts reported the symptoms that usually accompany this level of methamphetamine use included euphoria, excitation, rapid speech, insomnia, hallucinations, delusions, psychosis, poor impulse control, perceptual distortion, and aggressive behavior. Withdrawal symptoms included dysphoria, extreme fatigue, uncontrollable sleepiness, restlessness, agitation, irritability, nervousness, and paranoia. In addition, Liberty Life's experts noted a link between methamphetamine use and driving impairment, including reports of decreased

2. S.C.Code Ann. §§ 39–5–10 to –560 (1985 & Supp.2010).

3. The Court of Appeals' *Ortiz* decision was reversed on appeal to the New Mexico Supreme Court subsequent to the summary judgment hearing in this case. 148 N.M. 405, 237 P.3d 707, 716 (2010).

ability to concentrate, inability to divide attention, and errors in judgment. Both experts opined Ney was under the influence of methamphetamines when he drove his truck off the highway and struck a bridge support, thereby resulting in his death.

Liberty Life further noted the phrase "under the influence of any narcotic" appears in insurance codes in at least thirty-three states including South Carolina. Liberty Life relied on a case from the Eastern District of Missouri (*Doe v. General American Life Insurance Co.*, 815 F.Supp. 1281, 1285 (E.D.Mo.1993)), which held that cocaine is commonly understood by lay persons to be a narcotic drug despite the fact that it is technically a stimulant. Therefore, Liberty Life reasoned methamphetamine should also be classified as a narcotic. Liberty Life suggested the court should adopt a definition of narcotic to include any illegal mood or behavior altering drug or controlled substance.

The circuit court issued an order granting summary judgment to Hutchinson on the basis that methamphetamine is not a narcotic within the definition of the policy exclusion. The circuit court found Liberty Life had no right to deny coverage to Ney as the exclusion for injury while under the influence of any narcotic did not apply. The circuit court ordered Liberty Life to pay Hutchinson the balance due on the home at the time of Ney's death, in addition to 20% of the loan balance due in accordance with the additional death benefit provided in the policy, plus pre-judgment interest. This appeal followed.

## ISSUES ON APPEAL

(1) Did the circuit court err in adopting a specialized medical definition of the term "narcotic" in the context of an insurance policy which did not define the term, as opposed to adopting the plain and ordinary meaning of "narcotic" as understood by laypersons?

(2) Did the circuit court err in granting summary judgment to Hutchinson when the operative language of the Liberty Life policy exclusion providing that benefits will not be payable when the insured is "under the influence of any narcotic" was taken verbatim from section 38–71–370(9) of the South Carolina Code (2002)?

## STANDARD OF REVIEW

This court reviews the grant of a summary judgment motion under the same standard applied by the circuit court under Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 14 n. 2, 677 S.E.2d 612, 614 n. 2 (Ct.App.2009). Rule 56(c), SCRCP, provides summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In ascertaining whether any triable issue of fact exists, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Belton v. Cincinnati Ins. Co.*, 360 S.C. 575, 578, 602 S.E.2d 389, 391 (2004). "[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

## LAW/ANALYSIS

### I. Definition of the Term "Narcotic"

Liberty Life argues the circuit court erred in adopting a specialized medical definition of the term "narcotic" in the context of an insurance policy written for laypersons, as opposed to the plain and ordinary meaning of "narcotic" as understood by laypersons. We agree.

"Where the words of an insurance policy are capable of two reasonable interpretations, the interpretation most favorable to the insured will be adopted." *State Farm Fire & Cas. Co. v. Barrett*, 340 S.C. 1, 8, 530 S.E.2d 132, 135 (Ct.App. 2000). "We should not, however, torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties." *Id.*

"When a policy does not specifically define a term, the term should be defined according to the usual understanding

of the term's significance to the ordinary person." *Id.* at 8, 530 S.E.2d at 136; *USAA Prop. & Cas. Ins. Co. v. Rowland,* 312 S.C. 536, 539, 435 S.E.2d 879, 881–82 (Ct.App.1993) ("In the absence of a prescribed definition in the policy, the term should be defined according to the ordinary and usual understanding of the term's significance to the ordinary person.").

■ Dictionaries can be useful starting points for interpreting undefined terms in an insurance policy. *See S.C. Farm Bureau Mut. Ins. Co. v. Oates,* 356 S.C. 378, 382–83, 588 S.E.2d 643, 646 (Ct.App.2003) (citing *Heilker v. Zoning Bd. of Appeals,* 346 S.C. 401, 409, 552 S.E.2d 42, 46 (Ct.App.2001)). One dictionary defines "narcotic" as "a drug or other substance affecting mood or behavior and sold for nonmedical purposes, esp. an illegal one." *The New Oxford American Dictionary* 1129 (2d ed.2005). The *Oxford* dictionary also provides a specialized medical definition of the term "narcotic." The second definition of "narcotic" states *"Medicine* a drug that relieves pain and induces drowsiness, stupor, or insensibility." *Id.* at 1129.

Although no South Carolina case law directly addresses the question of whether methamphetamine is commonly understood by ordinary laypersons to be a narcotic drug, one case from Missouri is analogous to the present case and warrants discussion. In *Doe v. General American Life Insurance, Co.,* 815 F.Supp. 1281 (E.D.Mo.1993), the Eastern District Court of Missouri interpreted the terms of a health plan exclusion for injury or sickness arising out of the use of "a) narcotics; b) hallucinogens; c) barbiturates; d) marijuana; e) amphetamines; or similar drugs or substances." *Id.* at 1283. The district court found that the five categories of drugs listed in the health plan were ambiguous, as cocaine was not listed as being covered or excluded. *Id.* at 1285. To clarify this ambiguity, the district court looked to the ordinary, not specialized, meaning of these terms as a layperson would understand them. *Id.*

The district court noted "narcotics" were the broadest category because "the term 'narcotic' has come to have a generic meaning for drugs considered to be illegal." *Id.* The district court concluded that a layperson would commonly understand cocaine to be classified as a narcotic because it is a drug that

is illegal to buy, sell, and possess in this country. *Id.* Therefore, the district court reasoned "this Court need not be concerned with cocaine's 'pharmacological' similarities or dissimilarities with narcotics, hallucinogens, barbiturates, marijuana, or amphetamines." *Id.*

Other jurisdictions have used the terms "narcotic" and "methamphetamine" interchangeably. *See, e.g., United States v. Campos,* 306 F.3d 577, 580 (8th Cir.2002) ("A large quantity of narcotics is indicative of an intent to distribute, and we have previously held that possession of approximately 50 grams of methamphetamine is consistent with an intent to distribute."); *United States v. Robinson,* No. 4:08CR386(HEA), 2008 WL 4790324, *7 (E.D.Mo. October 29, 2008) (finding a search warrant was not deficient for referring to "certain narcotic drugs" at a residence because "the fact that methamphetamine may technically not be a narcotic is a distinction without a difference," and further finding that the term "narcotics" was used generically as a synonym for "controlled substances"); *United States v. Real Property Known as 77 East 3rd Street,* 869 F.Supp. 1042, 1058–59, 1064 (S.D.N.Y.1994) (using the terms narcotic and methamphetamine interchangeably); *State v. Carmichael,* 99 Hawaiʻi 75, 53 P.3d 214, 232 (2002) (noting although methamphetamine is not a narcotic from a scientific point of view, the term narcotic has evolved to include any addictive drug).

■ In the case at hand, the circuit court's order adopted the definition of "narcotic" supplied by Dr. Allen. Dr. Allen opined that methamphetamine is not a narcotic drug because narcotic drugs are those drugs that induce pain relief, drowsiness, sleep, and similar states of stupor. Methamphetamines, according to Dr. Allen, are stimulants that induce wakefulness, alertness, focus, and a heightened sense of awareness. The scientific description of the term "narcotic" according to a medical doctor is not representative of the ordinary and usual understanding of the term to an ordinary person. *See Rowland,* 312 S.C. at 539, 435 S.E.2d at 881–82 ("In the absence of a prescribed definition in the policy, the term should be defined according to the ordinary and usual understanding of the term's significance to the ordinary person."). Therefore, we hold the circuit court erred in adopting the specialized medical definition of "narcotic" supplied by Dr. Allen.

The Liberty Life policy did not define the term "narcotic" to exclude or include methamphetamines. Like the district court in *General American Life Insurance*, this court need not be concerned with methamphetamine's pharmacological similarities to other narcotic drugs. 815 F.Supp. at 1285. Instead, we look to the usual understanding of the term's significance to an ordinary person. *Barrett*, 340 S.C. at 8, 530 S.E.2d at 136. Based on its widespread illegal use, we believe a layperson would commonly understand methamphetamine to be a narcotic drug.

Accordingly, we hold the circuit court erred in granting summary judgment to Hutchinson. Because we reverse on the issue of how the circuit court defined the term "narcotic," we need not reach the additional issue raised on appeal. *See Whiteside v. Cherokee Cnty. Sch. Dist. No. One*, 311 S.C. 335, 340–41, 428 S.E.2d 886, 889 (1993) (holding an appellate court need not address the remaining issue on appeal when the resolution of a prior issue is dispositive).

**REVERSED AND REMANDED.**

WILLIAMS, GEATHERS, and LOCKEMY, JJ., concur.