This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**LEANNE MCCAUL,**

Worker-Appellant,

v.                                                                              **No. A-1-CA-35061**

**EAN HOLDINGS LLC, and**
**FIDELITY & GUARANTEE**
**INSURANCE CO.,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Shannon Riley, Workers' Compensation Judge**

Dorato & Weems LLC
Derek Weems
Albuquerque, NM

for Appellant

Hoffman Kelley Lopez L.L.P.
Jeffrey Federspiel
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** Worker Leanne McCaul appeals from an order of the Workers' Compensation Judge (the WCJ), denying Worker's request for sanctions against EAN Holdings LLC and Fidelity & Guarantee Insurance Company (collectively, Employer/Insurer) for unfair claim-processing practices under the Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2017). Worker argues that the WCJ erred on two grounds: (1) in determining there was no unfair claims processing in this case, and (2) in awarding less than fifteen percent post-judgment interest under NMSA 1978, Section 56-8-4(A)(2) (2004). We affirm. Because this is a nonprecedential, memorandum opinion, we set forth only such facts and law as are necessary to decide the merits.

**BACKGROUND**

**{2}** The WCJ approved Worker's petition for partial lump sum payment for debts at a hearing on March 25, 2015, requiring Employer/Insurer to pay Worker a lump sum for repayment to the Social Security Administration. An agreed form of order was filed on April 23, 2015 (the Lump Sum Order). It is questionable whether the Workers' Compensation Administration (the WCA) ever sent copies of the Lump Sum Order to the parties. On July 9, 2015, Worker's attorney located a copy of the Lump Sum Order and forwarded it to Employer/Insurer's attorney requesting payment. Employer/Insurer did not respond to this inquiry. On July 23, 2015, and again on August 4, 2015, Worker's attorney emailed Employer/Insurer's

attorney the Lump Sum Order and asked for a status on the check. Employer/Insurer did not respond to these inquiries.

{3}     On August 12, 2015, Worker filed an application to enforce order approving lump sum advancement (the Application) seeking, *inter alia*: (1) enforcement of the Lump Sum Order, (2) an order finding unfair claim-processing practices and awarding a ten percent penalty payable directly to Worker, (3) an award of 8.75 percent post-judgment interest from July 9, 2015, to the date the check is delivered, and (4) an award of attorney's fees of $750.00 paid entirely by Employer/Insurer. The Application attached the email correspondence from Worker's attorney to Employer/Insurer's attorney as outlined above. Employer/Insurer did not file a written response to the Application or otherwise respond to the Application prior to the hearing on the Application.

{4}     The WCJ held a hearing on the Application on September 2, 2015. No evidence was admitted at this hearing. Counsel for Worker and counsel for Employer/Insurer, instead, proceeded by making representations and argument. No party objected to this approach before the WCJ, and no party has challenged on appeal the WCJ's reliance on the representations and argument of counsel.

{5}     At the hearing, Worker's attorney reiterated the contents of the Application. Employer/Insurer's attorney offered an explanation for the delay in payment. Employer/Insurer's attorney explained that he received the Lump Sum Order in

3

July from Worker's attorney. Since then, Employer/Insurer's attorney had corresponded with the adjuster, and the adjuster had sent him a payment history so he could ensure no double payments were made. Employer/Insurer's attorney verified that the check could be issued approximately one week to ten days before the hearing and discussed issuing the check with the adjuster. Employer/Insurer's attorney stated that the adjuster had issued the check the day of the hearing with ten percent interest dating back to April 23, 2015, the date the Lump Sum Order was filed. Worker's attorney did not object to Employer/Insurer's attorney making the foregoing representations, otherwise challenge the reasonableness of Employer/Insurer's attorney's representations, or present any evidence or further representations in rebuttal. Instead, Worker's attorney argued that the delay nonetheless amounted to unfair claims processing.

{6} In making her ruling, the WCJ stated that she personally knew the WCA clerk's office was not sending out orders around the time the Lump Sum Order was issued and that she did not want to penalize Employer/Insurer for the WCA's error. The WCJ determined that there was no unfair claims processing in this case because there was no fault by either party. Worker's attorney then specifically requested a ruling from the WCJ as to whether the evidence of Employer/Insurer's conduct after July 9, 2015—i.e., email inquiries regarding the status of the check, the filing of the Application, and no response by Employer—was sufficient to

4

make out a claim for unfair claims processing. The WCJ made note that the argument of counsel is not evidence, yet proceeded, without objection from the parties, to base her ruling on the representations of counsel. The WCJ ruled that she did not believe this situation rose to the level of unfair claims processing because Employer/Insurer's attorney had to check that there was no double payment, and the WCJ believed Employer/Insurer's attorney was in fact doing this research and was diligently trying to get the matter resolved. Worker's attorney, at the request of the WCJ, prepared the written Order memorializing the WCJ's ruling, which was filed on September 18, 2015. The Order denied Worker's unfair claims processing claim but awarded post-judgment interest of ten percent from April 23, 2015, and attorney's fees to be paid fifty percent by Employer/Insurer and fifty percent by Worker. This appeal followed.

**DISCUSSION**

**I.  Unfair Claim-Processing Practices**

{7}  The parties dispute whether Worker preserved her unfair claims processing claim for appellate review, and whether the WCJ erred in deciding that there was no unfair claims processing in this case.

**A.  Worker Preserved Her Unfair Claims Processing Claim**

{8}  Employer/Insurer argues that Worker failed to preserve the issue of unfair claims processing for appeal because Worker did not request findings of fact or

5

conclusions of law. In this case, Worker's attorney asked for a ruling on the unfair claims processing claim, specifically inquiring why the facts presented did not rise to the level of unfair claims processing. Worker's counsel then prepared an order, at the direction of the WCJ, memorializing the WCJ's decision denying Worker's unfair claims processing claim. This is sufficient to preserve the issue of whether the WCJ erred in denying Worker's unfair claims processing claim for appellate review.[1] *See Unified Contractor, Inc. v. Albuquerque Hous. Auth.*, 2017-NMCA-060, ¶ 34, 400 P.3d 290 (concluding that a party can preserve a substantial evidence issue for appellate review by requesting findings and conclusions or otherwise calling the lower court's attention to the error and, even in the absence of either, this Court may still review the lower "court's decision to determine whether it is legally correct, and whether it is supported by findings of fact, if any, made by the [lower] court." (alteration, internal quotation marks, and citation omitted)).

---

[1] Worker, however, fails to preserve any claims outside the Act. Worker argues that Employer/Insurer owed duties under the common law and the Trade Practice and Frauds Article of the Insurance Code, NMSA 1978, §§ 59A-16-1 to --30 (1984, as amended through 2017). Yet, in Worker's Application and at the hearing on her Application, Worker relied exclusively on the Act and its associated regulations. *See Wolfley v. Real Estate Comm'n*, 1983-NMSC-064, ¶ 5, 100 N.M. 187, 668 P.2d 303 ("[I]ssues not raised in administrative proceedings will not be considered for the first time on appeal."); *Woolwine v. Furr's, Inc.*, 1978-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the [lower] court on the same grounds argued in the appellate court.").

## B. The WCJ Did Not Err in Determining There Was No Unfair Claims Processing

{9}     Worker argues that the WCJ erred in determining there was no unfair claims processing in this case.[2] "All workers' compensation cases are reviewed under a whole record standard of review[,]" *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926, to "determine if there is substantial evidence to support the result[,]" *Leonard v. Payday Prof'l*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177 (internal quotation marks and citation omitted). "We view the evidence in the light most favorable to the decision[.]" *Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. "We defer to the fact finder's resolution of conflicts in the evidence and indulge all inferences in favor of the findings." *Rodriguez v. McAnally Enters.*, 1994-NMCA-025, ¶ 11, 117 N.M. 250, 871 P.2d 14; *see also Romero v. Laidlaw Transit Servs., Inc.*, 2015-NMCA-107, ¶ 8, 357 P.3d 463 ("We give deference to the WCJ as fact finder where findings are supported by substantial evidence."). Our appellate courts review the WCJ's application of the law to the facts de novo. *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320. We also apply

---

[2] In her briefs, Worker refers to her claim interchangeably as bad faith and/or unfair claims processing. However, in Worker's Application and at the hearing on her Application, Worker argued that Employer/Insurer's actions amounted to unfair claims processing alone. We, therefore, evaluate only Worker's unfair claims processing claim. *See Wolfley*, 1983-NMSC-064, ¶ 5; *Woolwine*, 1978-NMCA-133, ¶ 20.

7

a de novo standard of review to the extent our analysis involves the interpretation of the Act and its associated regulations. *Romero*, 2015-NMCA-107, ¶ 8; *Howell v. Marto Elec.*, 2006-NMCA-154, ¶ 16, 140 N.M. 737, 148 P.3d 823.

{10} The party bringing a claim of unfair claims processing has the burden of proving such a claim. *Cf. Sosa v. Empire Roofing Co.*, 1990-NMCA-097, ¶ 8, 110 N.M. 614, 798 P.2d 215 (holding that the worker—in workers' compensation context—had the burden of proof to establish bad faith on the part of employer and insurer); *Munoz v. Deming Truck Terminal*, 1990-NMCA-084, ¶ 18, 110 N.M. 537, 797 P.2d 987 (holding that "a party seeking relief based upon disputed factual matters has the burden of proof of presenting sufficient evidence to support such contentions"); *Wallace v. Wanek*, 1970-NMCA-049, ¶ 9, 81 N.M. 478, 468 P.2d 879 ("He who alleges the affirmative must prove."). In this case, Worker has the burden.

{11} The Act grants a cause of action for unfair claim-processing practices, and awards a successful claimant a benefit penalty up to twenty-five percent of the amount ordered to be paid. Section 52-1-28.1(A), (B). The Act does not define unfair claim-processing practices but gives the WCA director authority to adopt definitions by regulation. Section 52-1-28(E). The applicable regulation in turn defines "unfair claims processing" as "any practice, whether intentional or not, which unreasonably delays or prolongs the payment of benefits at a rate not

8

consistent with the [A]ct." 11.4.1.7(W) NMAC. Whether a delay is unreasonable generally is a fact question to be considered in light of the surrounding circumstances. *Cf. Leyba v. Whitley*, 1995-NMSC-066, ¶ 28, 120 N.M. 768, 907 P.2d 172 ("As always, what is reasonable is a question of fact to be determined in light of all the surrounding circumstances."); *Dydek v. Dydek*, 2012-NMCA-088, ¶ 31, 288 P.3d 872 ("Whether, under the circumstances of this case, the offer to settle was timely is a question of fact.").

{12}    Before reviewing the WCJ's findings, we take this opportunity to emphasize that the record before us is far from ideal. The WCJ's resolution of Worker's unfair claims processing claim relied on the statements and argument of counsel. While the WCJ made note of this peculiarity, neither Worker nor Employer/Insurer objected to this procedure below nor objects to the WCJ's decision on this basis on appeal. We do not endorse the procedures utilized in the hearing on the Application, which resulted in a poorly-developed record. *Cf.* NMSA 1978, § 52-5-7 (1993) (contemplating the presentation of evidence in contested matters before a workers' compensation judge); *Munoz*, 1990-NMCA-084, ¶ 20 ("Arguments or recitations of counsel, whether presented orally or by memoranda or in briefs, are not evidence."). However, as this has not been raised as an issue on appeal, we proceed to evaluate Worker's claims of error on the limited record before us. *See Baker v. Endeavor Servs., Inc.*, ___-NMSC-___, ¶ 2, ___ P.3d ___ (No. S-1-SC-

9

36651, Sept. 6, 2018) (deciding workers' compensation case despite the fact that "[t]he record proper . . . [was] lacking in a number of ways" where "[t]he parties [did] not dispute the factual findings of the workers' compensation judge"); *N.M. Dep't of Human Servs. v. Tapia*, 1982-NMSC-033, ¶¶ 8-12, 97 N.M. 632, 642 P.2d 1091 (reversing the Court of Appeals' determination that administrative agency's procedures were not in accordance with law when the issue was not briefed on appeal nor challenged at trial); *State v. Am. Fed'n of State, Cty., & Mun. Emps.*, 2012-NMCA-114, ¶ 35, 291 P.3d 600 ("Our Supreme Court has admonished that courts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailored the case to fit within their legal theories." (alteration, internal quotation marks, and citation omitted)).

**{13}** The WCJ first determined that the delay between the entry of the Lump Sum Order and July 9, 2015 (the date Employer/Insurer received a copy of this order) was no fault of the Employer/Insurer as the WCA was not mailing out orders at that time, and this delay should not be held against Employer/Insurer. Worker argues that the WCJ erred in examining fault because unfair claims processing can arise from unintentional conduct and, as such, the regulations impose essentially strict liability. Worker misconstrues the applicable regulatory provisions. The regulation imposes liability for *unreasonable* delays, not strict liability for any and

10

all delays. Furthermore, Worker cites to no authority in support of her argument that fault of the parties should not be among the circumstances that are relevant to a determination of unreasonable delay. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Given this, we find no error in the WCJ's examination of fault in this case.

{14} The WCJ next found that Employer/Insurer's attorney "was in fact doing . . . research [to ensure no double payments] and he was diligently trying to get this matter resolved." On this basis, the WCJ determined that the facts did not give rise to unfair claims processing. Notably Worker does not challenge the WCJ's finding that Employer/Insurer undertook an investigation to determine whether a check needed to be issued. Instead, Worker argues that the WCJ actually found that Employer/Insurer did not begin its investigation into whether payment should be made until the week before the hearing, or, in the alternative, if Employer/Insurer began its investigation after receiving the Lump Sum Order, it was incredible that it took weeks to complete the investigation.

{15} As to Worker's first contention, the WCJ made no such finding that the Employer/Insurer did not begin its investigation until the week before the hearing. Instead, the WCJ found that "counsel for Employer/ Insurer represented to the [c]ourt that he had been in communication with his adjuster regarding the payment

11

to determine if the money remained owed [and] that they *determined the money was owed during communication taking place the week of August 24-28, 2015*[.]" The WCJ's finding in this regard is supported by Employer/Insurer's attorney's unchallenged statements that he began investigating whether payment should be made after receiving the Lump Sum Order in July. *See Rodriguez*, 1994-NMCA-025, ¶ 11 ("We . . . indulge all inferences in favor of the findings."); *Bryant v. Lear Siegler Mgmt. Servs. Corp.*, 1993-NMCA-052, ¶ 7, 115 N.M. 502, 853 P.2d 753 (We do not "seek to determine whether the evidence supports a contrary finding.").

{16}     Worker's second contention is that the investigation undertaken by Employer/Insurer was simply "double checking a payment ledger to be sure that the payment had not been issued . . . , which could be performed in a matter of seconds, not requiring a matter of months." But there is no record to support this contention. Indeed, the thoroughness of Employer/Insurer's investigation simply was not explored before the WCJ. And, "[i]n the absence of evidence in the record to the contrary, we assume the record supports the ruling of the lower court." *State ex rel. Children, Youth & Families Dep't v. Andrea M.*, 2000-NMCA-079, ¶ 7, 129 N.M. 512, 10 P.3d 191; *see also Reeves v. Wimberly*, 1988-NMCA-038, ¶ 21, 107 N.M. 231, 755 P.2d 75 ("Upon a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the trial court's decision, and

the appellate court will indulge in reasonable presumptions in support of the order entered.").

{17} Worker next contends that Section 52-5-10, which provides an enforcement mechanism for past due payments of compensation orders, creates essentially per se liability for unfair claims processing. Section 52-5-10 provides that when a payment of a compensation order is in default for thirty days or more, the person owed the monies can make an application for a supplementary compensation order to the WCA director to declare the amount in default and then petition the district court for entry of judgment on the supplementary compensation order. Section 52-5-10(A), (B). Worker reads Section 52-5-10 to impose a "strict time limit" of thirty days and suggests any violation of this time limit amounts to per se unfair claims processing. Again, Worker misconstrues the applicable statutory and regulatory provisions. While Section 52-5-10 certainly provides guidance in determining what may amount to delay "at a rate not consistent with the [A]ct," 11.4.1.7(W) NMAC, it does not, as Worker suggests, impose liability for unfair claims processing for any delay in payment of thirty days or more. Had the Legislature or the WCA director intended that every default under Section 52-5-10 amount to unfair claims processing, the Act and the regulation could have been written that way. They were not.

{18} Worker finally contends that Employer/Insurer's actions amount to specific examples of unfair claim-processing practices found in the regulations. In particular, Worker argues that Employer/Insurer engaged in the following prohibited practices:

> (2) failing to acknowledge and act promptly upon communications with respect to claims;
> (3) failing to adopt and implement reasonable standards for the prompt investigation and processing of claims;
> (4) failing to affirm or deny coverage of claims within a reasonable time after a request for payment of benefits has been submitted to an employer;
> (5) not attempting in good faith to develop prompt, fair and equitable settlements of claims in which liability has become clear.

11.4.1.7(W) NMAC. As to alleged practice (3), Worker presented no evidence pertaining Employer/Insurer's standards for investigating and processing claims or the lack thereof. As to alleged practices (4) and (5), Worker fails to explain how the facts and circumstances of this case support a determination that these practices have been committed; and a review of the record does not make this apparent. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

{19} As to alleged practice (2), the record does demonstrate a lack of communication by Employer/Insurer in responding to Worker's inquiries pertaining to the Lump Sum Order. While we cannot condone Employer/Insurer's silence, under the plain regulatory language, Employer/Insurer's failure to

14

acknowledge Worker's communications must be coupled with a failure to act promptly in order to make out an unfair claims processing claim. *See* 11.4.1.7(W)(2) NMAC. In this regard, the WCJ made a determination that Employer/Insurer was acting diligently to get the matter resolved. Employer/Insurer provided an explanation for the delay in payment of the Lump Sum Order, which went unchallenged and unrebutted by Worker. Given this, the WCJ's reliance in this case on Employer/Insurer's explanation in determining there was no unfair claims processing was rational. *See Gomez v. Bernalillo Cty. Clerk's Office*, 1994-NMCA-102, ¶ 6, 118 N.M. 449, 882 P.2d 40 ("When a finding is made against the party bearing the burden of persuasion, the reviewing court will affirm if the fact finder acted rationally.").

{20}     We conclude that the WCJ's findings pertaining to the reasonableness of the delay are supported by substantial evidence in the limited record before us. As such, under the particular circumstances of this case, we cannot say that the resulting delay was unreasonable or that the WCJ erred in determining there was no unfair claims processing. Our decision here today, however, does not approve of Employer/Insurer's failure to respond to inquiries by Worker regarding the payment of amounts due pursuant to a compensation order. And it seems quite possible to us that the investigation undertaken by Employer/Insurer could have been completed more expeditiously. Facts supporting such a finding could have

15

been elicited by the Worker in any number of ways—for example, by calling the adjuster to testify, by pointedly questioning the Employer/Insurer's attorney (with the permission of the WCJ) about the extent and length of the investigation, or perhaps by simply objecting to Employer/Insurer making factual representations through counsel. This record, however, was not developed before the WCJ, is not presented to us, and cannot form the basis of our decision.

## II.    Post-Judgment Interest Rate

{21}    Worker additionally argues that the WCJ erred in awarding post-judgment interest at a rate of ten percent, instead of the heightened interest rate of fifteen percent under Section 56-8-4(A)(2). Employer/Insurer argues that Worker failed to preserve this issue. In her Application, Worker did not request heightened interest at fifteen percent, but instead requested the standard post-judgment interest of 8.75 percent under Section 56-8-4(A). Moreover, at the hearing on her Application, Worker did not object to Employer/Insurer's offer of ten percent post-judgment interest or the WCJ's award of the same. As such, this issue is not preserved. *See Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 12, 125 N.M. 748, 965 P.2d 332 ("The party claiming error must have raised the issue below clearly, and have invoked a ruling by the court, thereby giving the [lower] court an opportunity to correct any error[.]" (citations omitted)). The award of ten percent post-judgment interest stands.

**CONCLUSION**

**{22}** For all the foregoing reasons, the WCJ's September 18, 2015 Order is affirmed.

**{23}** **IT IS SO ORDERED.**

_____

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

_____

**STEPHEN G. FRENCH, Judge**

_____

**EMIL J. KIEHNE, Judge**